**Samuel J. JORDON et al.,
Plaintiffs-Appellees,**

**v.**

**John J. GILLIGAN et al., Defendants-
Appellants.**

**No. 73-1973.**

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 1, 1974.

Decided July 18, 1974.

---

James A. Laurenson, Columbus, Ohio, for defendants-appellants; William J. Brown, Atty. Gen. of Ohio, Donald J. Guittar, Frank Josselson, Asst. Attys, Gen., Columbus, Ohio, on brief.

Albert J. Ortenzio, Youngstown, Ohio, for plaintiffs-appellees; Nathaniel R. Jones, New York City, Ortenzio & Pritchard, Youngstown, Ohio, on brief.

Before PECK, MILLER and LIVELY, Circuit Judges.

JOHN W. PECK, Circuit Judge.

This opinion is filed vice the opinion filed April 25, 1974, pursuant to an order entered herein of even date herewith granting defendants-appellants' motion for a rehearing and withdrawing the April 25, 1974 opinion.

This is an appeal from an order entered in the district court denying appellants' motion to vacate a prior order of that court awarding attorneys' fees against the State of Ohio. The appellants' principal assertion is that the award was void since, under the Eleventh Amendment to the Constitution of the United States, the State was immune from the award, and the court was without jurisdiction to make it.

The record establishes that in November of 1971, Samuel Jordon filed a class action suit against the members of the Ohio Apportionment Board, a state body responsible for the decennial reapportionment of the Ohio legislature. Included as defendants were state officials and members of the Mahoning County Board of Elections in their official capacities. The State of Ohio was not a named defendant. Plaintiff sought, on behalf of the class of all Ohio voters, a declaratory judgment that a reapportionment plan adopted by the Board was constitutionally infirm, and he asked that injunctions requiring the Board to establish a revised plan that would satisfy applicable requirements be issued. Plaintiff also prayed for an award of attorneys' fees against the defendants. Federal jurisdiction was invoked pursuant to 28 U.S.C. § 1343 for alleged violations of the Fourteenth and Fifteenth Amendments as implemented by 42 U.S.C. § 1983.

The Board's original plan was declared unconstitutional by the three-judge district court convened to hear the case under the terms of 28 U.S.C. § 2281. The district court ordered appellants to submit a new plan that would

comply with state and federal constitutional demands. A revised plan was duly submitted to and approved by the court in December of 1971. After allowing appellees 60 days in which to file objections to the revised plan, the court entered a final order adopting it for the decennium.

Counsel for appellees filed applications for an award of attorneys' fees and expenses in the combined amount of $27,272.65. The district court, in the absence of any objections to the applications from appellants, entered the following order on May 19, 1972:

> "Counsel for plaintiffs have made application for the allowance of attorney's fees and expenses *to date*. There is no opposition to the amounts requested and they seem reasonable on their face.

> "Therefore, the State of Ohio, through John J. Gilligan, Governor; . . . collectively, in their official capacities, and as the persons responsible for apportioning the State of Ohio, are ordered and directed to pay attorney's fees . . . ."

Eight months passed and the judgment remained unpaid. On January 17, 1973, the district court ordered the award of attorneys' fees and expenses taxed as costs against the State of Ohio.[1] Appellees filed a praecipe for a writ of fieri facias against a bank account maintained by the State at a bank in Cleveland, Ohio, and the court acted to enforce it by ordering the bank to pay the contested monies to the clerk of the court.[2]

The appellants filed a motion to vacate the award of attorneys' fees based on Rule 60(b) of the Federal Rules of Civil Procedure, and simultaneously filed a motion for stay of execution pending disposition of the Rule 60(b) motion. Shortly thereafter, but before the writ was enforced, the State paid the $27,272.65 judgment. In response to the voluntary payment, the district court vacated, by order, the attachment of the State's bank account. The court also issued an order denying appellants' Rule 60(b) motion. It was from this denial that the present appeal was perfected.

■ Rule 60(b), Fed.R.Civ.P., provides in pertinent part as follows: "On motion and upon such terms as are just, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: . . . (4) the judgment is void . . . ." If, as appellants assert, the award of attorneys' fees and expenses against the State of Ohio was void for lack of jurisdiction, we must reverse. A void judgment is a legal nullity and a court considering a motion to vacate has no discretion in determining whether it should be set aside. *See generally*, 7 J. Moore, Federal Practice, ¶ 60.25[2], at 301 (2d ed. 1973).

■ Before discussing the central issue in this case a few words of clarification are in order. This cause, insofar as the award of attorneys' fees is concerned, although nominally against the chief executive and other officials of the State of Ohio, in substance and effect was against the State.[3] Any award of

---

1. "By previous order . . . the State of Ohio was ordered to pay Plaintiff's attorneys' fees in this action. The Court now being advised that the State of Ohio has failed and continues to refuse to comply with said order, now directs that Plaintiff's attorneys' fees and expenses be taxed as costs in this action."

2. "The Court being advised that there are funds being held in excess in the amount of $27,272.65, it is ORDERED that the Union Commerce Bank turn over and deliver funds in the sum of $27,272.65 to the Clerk of this Court forthwith; said amount representing

the sum designated and levied upon by the Fieri Facias." Order of February 2, 1973.

3. There can be no doubt that the district court intended the award of attorneys' fees to run against the State of Ohio, even though the State was not a party to this suit. Although the exact meaning of the court's May 19, 1972 order, quoted in the text, is arguably unclear, any possible misinterpretation was obviated by the January 17, 1973 order (*supra* note 2), and by the subsequent attachment of the State's bank account.

attorneys' fees, whether against the State of Ohio or its officials, vitally affects the rights and interests of the State in preserving its revenues. According to the general rule "a suit is against the sovereign if 'the judgment sought would expend itself on the public treasury . . . .' Land v. Dollar, 330 U.S. 731, 738, 67 S.Ct. 1009, 91 L. Ed. 1209 (1947) . . . ." Dugan v. Rank, 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963); *accord* Dawkins v. Craig, 483 F.2d 1191 (4th Cir. 1973). And as this Court stated in Harrison Construction Co. v. Ohio Turnpike Com'n., 272 F.2d 337, 340 (6th Cir. 1959), "When the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants."

■ Appellants do not contend that state officials are immune from suits brought to restrain unconstitutional acts undertaken in their official capacities. The law clearly recognizes the right of an interested party to force state officials to act in accordance with the Constitution. Georgia R. R. and Banking Co. v. Redwine, 342 U.S. 299, 72 S.Ct. 321, 96 L.Ed. 335 (1952); Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L. Ed. 714 (1908); Lee v. Board of Regents of State Colleges, 441 F.2d 1257 (7th Cir. 1971); Samuel v. University of Pittsburgh, 56 F.R.D. 435 (W.D.Pa. 1972); Wright, Law of Federal Courts, § 48, at 183 (2d ed. 1970). Appellants do assert, however, that both a state and its officials are immune from monetary awards arising in connection with such a suit, even if the awards are for attorneys' fees.

■■ To further sharpen the focus of this inquiry, we note that in the instant case the district court ordered the attorneys' fees taxed as costs, and ordered the State of Ohio to pay the costs.[4] We do not question the general principle that a court may tax attorneys' fees in the appropriate circumstances in cases involving private parties[5] or where sanctioned by statutory law,[6] but it seems basic that if a party is immune from an award of attorneys' fees as such, that immunity is not altered by taxing the fees as part of the costs. If the award is void in one form, it is void in the other.

■ Stripped of distracting shadow questions, the case before us presents a singular, although by no means simple, issue: Does a federal court have the power to award attorneys' fees against a state or its officials acting in their official capacities in a suit brought under 42 U.S.C. § 1983 to vindicate constitutional rights? To this inquiry we must respond in the negative.

The Supreme Court reviewed and clarified the principles under which a federal court may award attorneys' fees against an unsuccessful litigant in Hall v. Cole, 412 U.S. 1, 93 S.Ct. 1943, 36 L. Ed.2d 702 (1973). The Court recognized the existence of a "class benefit" rationale for awarding fees where "plaintiff's successful litigation confers 'a substantial benefit on the members of an ascertainable class . . . . ' "

---

4. Order of January 17, 1973, *supra* note 2.

5. "Although the traditional American rule ordinarily disfavors the allowance of attorneys' fees in the absence of statutory or contractual authorization, federal courts, in the exercise of their equitable powers, may award attorneys' fees when the interests of justice so require." Hall v. Cole, 412 U.S. 1, 4, 93 S.Ct. 1943, 1945, 36 L.Ed.2d 702 (1973). Justice has been held to so require where bad faith is exhibited by the unsuccessful litigant or where "plaintiff's successful litigation confers 'a substantial benefit on members of an ascertainable class . . . . ' " *Id.* at 5, 93 S.Ct. at 1946.

This Court has also recognized the equitable power to make such awards. Smoot v. Fox, 353 F.2d 830 (6th Cir. 1965).

We take heed of the fact that in this case there was no evidence of bad faith on the part of appellants or the State of Ohio.

6. Statutes often provide for awards of attorneys' fees. *See, e. g.,* Clayton Act, 15 U.S. C. § 15; Communications Act of 1934, 47 U.S.C. § 206; Interstate Commerce Act, 49 U.S.C. § 16(2); etc.

*Id.* at 5, 93 S.Ct. at 1946. The basis of this theory is that because the efforts of the individual plaintiff benefited a group or class of persons, equity requires the group to share the financial burden of the plaintiff's litigation. In the instant case, that appellee's prosecution of this suit to bring Ohio's legislative districts within the requirements of the one man-one vote rule benefited every Ohio voter is not questioned. Implicit in the Court's holding was the fact that the class benefit theory can only be employed where a court has the requisite jurisdiction to make such an award. 412 U.S. at 5, 93 S.Ct. 1943. In this case the district court clearly had jurisdiction over the appellants insofar as the suit involved a plea for injunctive relief to force constitutional reapportionment.

■ The Eleventh Amendment, however, contains an express constitutional limitation on the power of the federal courts.

"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

Through judicial interpretation, this amendment has been held to bar a citizen who would bring suit against his own state. Employees v. Missouri Public Health Dep't., 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973); Parden v. Terminal Ry. of the Alabama State Docks Dep't., 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964). This amendment has also been found to be the embodiment of the doctrine of sovereign immunity. Adams v. Harris County, Texas, 316 F.Supp. 938 (S.D.Texas 1970), rev'd on other grounds, 452 F.2d 994 (5th Cir. 1971). The sovereign immunity of the states is, then, a limitation of federal judicial power, that is, on the constitutional grant of jurisdiction to the federal courts.

■ As stated heretofore, the Eleventh Amendment's immunity is unavailable to state officials where an action of constitutional proportions is brought for injunctive relief. Georgia R. R. and Banking Co. v. Redwine, *supra*, etc. The rationale behind the doctrine of sovereign immunity is the protection of the states' fiscal integrity. *See,* Land v. Dollar, *supra*; Dugan v. Rank, *supra*; Harrison Construction Co. v. Ohio Turnpike Com'n., *supra*.

Appellees place primary reliance on Sims v. Amos, 340 F.Supp. 691 (M.D. Ala.1972), a reapportionment suit involving the State of Alabama. Therein a three-judge district court awarded attorneys' fees against Alabama's governor, attorney general, secretary of state and state legislators on the basis of the class benefit doctrine. Although the opinion does not state that the award was made against the above officials in their official capacities, it is clear that that was indeed the case. We note, however, that the Eleventh Amendment problem before us was disposed of in rather summary fashion in a footnote to the opinion.[7] *Sims* was appealed to the Supreme Court. Appellees assert that the Supreme Court's summary affirmance of *Sims,* 409 U.S. 942, 93 S.Ct. 290, 34 L.Ed.2d 215 (1972), constitutes binding precedent on this Court in the case under consideration. We do not agree.

In our original opinion in the present case we pointed out that *Sims* was reported in two separate segments at the district level. The initial *Sims* opinion, dealing with the substantive reapportionment issues, was reported at 336 F. Supp. 924, while the decision involving attorneys' fees appeared at 340 F.Supp. 691. We also noted that the Supreme

---

7. "8. Individuals who, as officers of a state, are clothed with some duty with regard to a law of the state which contravenes the Constitution of the United States, may be restrained by injunction, and in such a case the state has no power to impart to its officers any immunity from such injunction or from its consequences, including the court costs incident thereto." Sims v. Amos, 340 F.Supp. 691, 694, n. 8 (M.D.Ala.1972) (citations omitted).

Court's order of affirmance stated only that Sims v. Amos, D.C., 336 F.Supp. 924, was affirmed.[8] Since that time, however, it has come to our attention that in the bound version of Volume 409 of the United States Reports that order has been expanded; it now states that both 336 F.Supp. 924 and 340 F.Supp. 691 were affirmed.[9] That modification,[10] while it has prompted us to revise our original opinion, does not alter the conclusion reached therein.

■ Decisions of the United States Supreme Court rendered by written opinions are binding on all courts, state and federal. The Court's holding is stare decisis and cannot be overruled except by the Court itself. Even the Court's dicta is of persuasive precedential value. However, "[a] summary affirmance without opinion in a case *within the Supreme Court's obligatory appellate jurisdiction* [such as *Sims*] has very little precedential significance." Dillenburg v. Kramer, 469 F.2d 1222, 1225 (7th Cir. 1972) (emphasis added) (citations omitted).

Two months after *Dillenburg* was announced, the Seventh Circuit made the following apparently inconsistent statement relative to this issue: "[A] summary affirmance [by the Supreme Court] is a decision on the merits having precedential value." Jordan v. Weaver, 472 F.2d 985, 989 (7th Cir.

1973). In *Jordan* the court relied upon three separate three-judge district court decisions which had been summarily affirmed by the Supreme Court,[11] and upon one similar decision which had been affirmed by an opinion which did not mention the question in dispute (award of retroactive benefits)[12] in reaching its decision that the Eleventh Amendment did *not* bar actions against state officials for retroactive welfare payments. That decision was subsequently reversed by the Supreme Court. Edelman v. Jordan, 415 U.S. 651, 94 S. Ct. 1347, 39 L.Ed.2d 662 (1974). Mr. Justice Rehnquist, writing for a majority of the Court, touched upon the validity of summary affirmances:

"Shapiro v. Thompson and these three summary affirmances [see footnotes 11 & 12 and accompanying text] obviously are of precedential value in support of the contention that the Eleventh Amendment does not bar the relief awarded by the District Court in this case. Equally obviously they are not of the same precedential value as would be an opinion of this Court treating the question on the merits." *Edelman, supra*, 94 S.Ct. at 1359.

This position is in accordance with the views of the commentators:

"While per curiam affirmances by the Supreme Court have been held to be binding precedents in later cases in

8. The Preliminary Print of Volume 409 of the Official Reports of The Supreme Court (United States Reports) contained the following statement at 942: "No. 72-12. Amos, Secretary of State of Alabama, et al. v. Sims et al. Affirmed on appeal from D. C.M.D.Ala. Reported below: 336 F.Supp. 924."

9. The bound version of volume 409 U.S. 942, 93 S.Ct. 290, 34 L.Ed.2d 215 states as follows: "No. 72-12. Amos, Secretary of State of Alabama, et al. v. Sims et al. Affirmed on appeal from D.C.M.D.Ala. Reported below: 336 F.Supp. 924; 340 F. Supp. 691."

10. One court has attributed "the Court's omission [of 340 F.Supp. 691] to inadvertence." *See* Skehan v. Board of Trustees, *infra*.

11. State Dep't of Health and Rehabilitative Services v. Zarate, 407 U.S. 918, 92 S.Ct. 2462, 32 L.Ed.2d 803 (1972), aff'g 347 F. Supp. 1004 (S.D.Fla.1971); Sterrett v. Mothers and Children's Rights Organization, 409 U.S. 809, 93 S.Ct. 68, 34 L.Ed.2d 70 (1972), aff'g unreported order and judgment of N.D.Ind.1972 on remand from Carpenter v. Sterrett, 405 U.S. 971, 92 S.Ct. 1199, 31 L.Ed.2d 246 (1971); Gaddis v. Wyman, 304 F.Supp. 717 (S.D.N.Y.1968), aff'd per curiam sub nom. Wyman v. Bowens, 397 U.S. 49, 90 S.Ct. 813, 25 L.Ed.2d 38 (1969).

12. Shapiro v. Thompson, 270 F.Supp. 331 (D.C.Conn.1967), aff'd., 394 U.S. 618, 89 S. Ct. 1322, 22 L.Ed.2d 600 (1969).

the lower courts, they have so frequently proved to be such a shaky guide to the outcome of later full-dress considerations, that in many decisions in the district courts and courts of appeals they have received but scant attention. 1B J. Moore, Federal Practice, ¶ 0.402[2] (1973 Supp. at pp. 13–14).

For the reasons stated above, it is concluded that the Supreme Court's summary affirmance of Sims v. Amos does not constitute controlling precedent on the Eleventh Amendment question herein presented.

There is no dearth of reported decisions on the attorneys' fees issue in lower federal courts. *Sims* has been cited with approval and construed as precedent for awarding attorneys' fees against states and their officials in the following cases. E. g., Jordan v. Fusari, 496 F.2d 646 (2d Cir., filed April 29, 1974); Bradenburger v. Thompson, 494 F.2d 885 (9th Cir., filed March 25, 1974); Gates v. Collier, 489 F.2d 298 (5th Cir. 1973); Taylor v. Perini, 359 F.Supp. 1185 (N.D.Ohio 1973), appeal argued, No. 73–2071 (6th Cir., April 15, 1974); La Raza Unida v. Volpe, 57 F. R.D. 94 (N.D.Cal.1972), aff'd 488 F.2d 559 (9th Cir. 1974) (no reference made to attorneys' fees issue).

In La Raza Unida v. Volpe, *supra*, the district court was much impressed by a California statute which provided that money claims against state officials were to be reimbursed by the state. Whether the court considered this a waiver of immunity does not appear, but the Supreme Court of Ohio has specifically held that the State of Ohio is immune from awards of attorneys' fees in the absence of a consent rendered by a two-thirds vote of the General Assembly. Grandle v. Rhodes, 169 Ohio St. 77, 157 N.E.2d 336 (1959); *see also,* Constitution of Ohio, Art. II, §§ 22 & 29. The State of Ohio has not waived its immunity in this case.

In Gates v. Collier, *supra*, the Fifth Circuit affirmed an award of attorneys' fees against officials of the State of Mississippi responsible for impermissible conditions found in a state prison. In reaching its decision the court concluded that an "award of attorney's fees is not an award of damages against the State, even though funds for payment of the costs may come from the state appropriations." 489 F.2d at 302. Whether an award of attorneys' fees differs from an award of damages seems to us to be irrelevant, and we respectfully decline to adopt the position taken by the Fifth Circuit. The balance of the cases mentioned above rely in varying degrees upon *Sims* and each other. As stated hereinabove, we find no reasonable basis for concluding that the Eleventh Amendment does not bar awards of attorneys' fees against the sovereign states.

However, lower court decisions have not been unanimous. In Sincock v. Obara, 320 F.Supp. 1098 (Del.1970), a three-judge district court concluded that an award of attorneys' fees could not be made against the State of Delaware because of the prohibition contained in the Eleventh Amendment. The same result was reached by the Third Circuit in Skehan v. Board of Trustees, Bloomsburg State College, 501 F.2d 31 (3rd Cir., filed May 3, 1974). In *Skehan* Judge Gibbons held that "Edelman, [Edelman v. Jordan, *supra*] while not ruling on the matter specifically, appears to bar the award of attorneys fees from the state treasury as well." (at 42.)

*Skehan* involved, among other things, a claim for an attorney's fee against the defendant state college. The court remanded the case to the district court for a determination of the exact legal status of defendant under Pennsylvania law, stating that if it were not clothed with sovereign immunity the attorney's fee could be awarded against it. The Court discussed *Sims* in a footnote, which we quote in its entirety:

> "7. The contention could be made that, by failing to expressly overrule its summary affirmance in Sims v. Amos, 409 U.S. 942, 93 S.Ct. 290, 34

L.Ed.2d 215 (1972), *aff'g* 336 F.Supp. 924 (M.D.Ala.1972) (3-judge court) of an award of attorneys fees against state officers which was to be satisfied from the state treasury, the Court meant to leave the issue open. *See* Gates v. Collier, 489 F.2d 298 (5th Cir. 1973) following *Sims* and quoting the jurisdictional statement raising the eleventh amendment issue before the Court. Such a conclusion would, however, be inconsistent with the *Edelman* Court's rationale. We attribute the Court's omission to inadvertence. For a listing of other decisions overruled, *see* note 6 *supra.*

"Skehan, pointing to language in Justice Marshall's dissent in Edelman v. Jordan, *supra,* contends that the liability of the Commonwealth for retroactive benefits in his case is still open. Justice Marshall wrote:

'It should be noted that there has been no determination in this case that state action is unconstitutional under the Fourteenth Amendment. Thus, the Court necessarily does not decide whether the States' Eleventh Amendment sovereign immunity may have been limited by the later enactment of the Fourteenth Amendment to the extent that such a limitation is necessary to effectuate the purposes of that Amendment, an argument advanced by an *amicus* in this case. In view of my conclusion that any sovereign immunity which may exist has been waived, I also need not reach this issue.' 42 U.S.L.W. at 4432 n. 2 [94 S.Ct. at 1371].

An appreciation of this cryptic comment requires some refined analysis of the issues dealt with in Justice Rehnquist's majority opinion. Claims for money against a state can arise in three separate legal frameworks. First, the claim may be based upon state law, purely and simply; breach of contract, for example. Second, it may be based upon fed-eral law made binding upon the states by virtue of the supremacy clause; nonpayment of benefits mandated by the Social Security Act, for example. Third, it may be based upon the fourteenth amendment, which binds the states directly and under § 5 of which Congress has the power to create remedies. *Edelman* involves retroactive welfare benefits withheld in violation of the Social Security Act, and thus falls in the second legal framework. A fourteenth amendment claim provided a basis for federal jurisdiction, but was not decided. *See* Hagans v. Lavine, 42 U.S.L.W. 4381, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). Thus Justice Marshall is technically correct that *Edelman* does not dispose of the third category. But the majority opinion expressly overrules Shapiro v. Thompson, *supra,* State Department of Health and Rehabilitative Services v. Zarate, *supra,* and Wyman v. Bowens, *supra,* all fourteenth amendment cases. *We think Edelman must be read as closing the door on any money award from a state treasury in any category."* (n. 7, p. 42) (emphasis supplied).

Careful study of the *Edelman* opinion leads us to conclude, as did the Third Circuit, that the Eleventh Amendment prohibits the awarding of attorneys' fees against unconsenting sovereign states. We note in particular the following language from that opinion: "Thus the rule has evolved that a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." *Edelman, supra,* 94 S.Ct. at 1356. Although appellees urge that attorneys' fees are analogous to costs, the taxing of which is permitted against states,[13] the test for determining whether a particular type of relief passes muster, as set out in *Edelman,* indicates the opposite. The

13. Fairmont Creamery Co. v. Minnesota, 275 U.S. 70, 48 S.Ct. 97, 72 L.Ed. 168 (1927).

Amendment bars any award which is "measured in terms of a monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials." *Edelman, supra,* 94 S.Ct. at 1358. In our opinion, awards of attorneys' fees fall within that classification and are, therefore, barred.

One of the reasons given by the district court in this case for denying appellants' Rule 60(b) motion was that "the judgment entered herein is *res judicata* as to any issue which was or could have been raised in the initial proceedings." While it is true, as the district court pointed out, that appellants failed to object to the award until after the judgment was entered and execution proceedings undertaken, there are two reasons why the court should have granted the motion to vacate. First, a void judgment is no judgment at all and is without legal effect. Lubben v. Selective Service System Local Bd. No. 27, 453 F.2d 645 (1st Cir. 1972). Secondly, the doctrine of "res judicata does not preclude a litigant from making a direct attack [under Rule 60(b)] upon the judgment before the court which rendered it." 1B J. Moore, Federal Practice, ¶ 0.407, at 931 (2d ed. 1973); *see* United States v. United States Fidelity Guaranty Co., 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894 (1940); *see also,* Lubben v. Selective Service System Local Bd. No. 27, *supra,* 453 F.2d at 649.

Closely allied to the district court's reasons for denying the motion to vacate is appellees' suggestion that appellants and the State of Ohio have, by their failure to object until after the judgment and payment, waived any immunity they may have had. A party cannot be precluded from raising the issue of voidness in a direct or collateral attack because of the failure to object prior to, or at the time of, entry of the judgment.

"The Eleventh Amendment declares a policy and sets forth an explicit limitation on federal judicial power of such compelling force that this Court will consider the issue arising under this Amendment in this case even though argued for the first time in this Court." Ford Motor Co. v. Dep't of Treasury of Indiana, 323 U.S. 459, 467, 65 S.Ct. 347, 352, 89 L.Ed. 389 (1945).

And, "the Eleventh Amendment defense sufficiently partakes of the nature of a jurisdictional bar so that it need not be raised in the trial court . . . ." Edelman v. Jordan, 415 U.S. 651, 678, 94 S.Ct. 1347, 1363, 39 L.Ed.2d 662 (1974). Thus, once it is determined that a state is not subject to federal jurisdiction because of the operation of the Eleventh Amendment, a court must vacate any judgment entered in excess of its jurisdiction. In light of the above analysis it is clear that the denial of appellants' motion to vacate under Fed.R.Civ.P. 60(b) was erroneous.

Finally, appellees ask that we consider how critically important it is for plaintiffs in public interest litigation to have the right to obtain awards of attorneys' fees and expenses. We fully recognize the often valuable service performed by the so-called "private attorney general" in protecting the constitutional rights of large segments of our society, but we are also mindful of the clear limitation on federal jurisdiction in the Eleventh Amendment. This decision does not affect in any way the validity of awarding attorneys' fees against non-sovereign defendants, and in view of its limited scope it is difficult to see why it would have the dire consequence of preventing public interest litigation that appellee envisions.

The judgment of the district court entered June 12, 1973, denying appellants' motion to vacate the award of attorneys' fees and expenses is reversed, and the order of the district court dated May 19, 1972, is vacated.