**Helen P. ANDERSON**

**v.**

**TENNESSEE OFFICE OF ECONOMIC OPPORTUNITY.**

**No. 74-201-NA-CV.**

United States District Court,
M. D. Tennessee,
Nashville Division.
Oct. 23, 1974.

Omer, Taylor, Ellis & Brabson, Nashville, Tenn., for plaintiff.

William B. Hubbard, Asst, Atty. Gen., Nashville, Tenn., for defendant.

## MEMORANDUM

MORTON, District Judge.

This suit was brought by Helen P. Anderson, alleging discrimination in employment in violation of 42 U.S.C. § 2000e, et seq. (also referred to as "the Civil Rights Act" or "the Act") by the State of Tennessee in its operation of the Tennessee Office of Economic Opportunity. Plaintiff received her notice of right to sue, pursuant to § 2000e–5 (f)(1) of the Act on February 2, 1974; this suit was filed on May 3, 1974.

The complaint alleges in general that the State failed to provide the plaintiff with training, orientation, and salary increases, and eventually terminated her employment because of her race and sex. In an effort toward conciliation of the charges, the Director of the Tennessee Office of Economic Opportunity drafted a conciliatory agreement dated May 1, 1974. This agreement, in effect, provided that the plaintiff would be reimbursed in the amount of $5,065 in back wages and salary increases and would be reinstated as a State employee at a level commensurate with her previous employment with the State. The State actually reinstated the plaintiff in State employment, but refuses to pay the specified sum for back wages. Plaintiff now seeks to recover said sum plus attorney's fees.

■ Plaintiff first contends that the Tennessee Office of Economic Opportunity does not enjoy the sovereign immunity of the State of Tennessee because it is "an entity in itself, an organization with its own budget." The court finds this contention to be without merit. It is clear that the Tennessee Office of Economic Opportunity is a state agency; as such, absent waiver, defendant enjoys the state's immunity from suit. Re New York, 256 U.S. 490, 41 S.Ct. 588, 65 L. Ed. 1057 (1921); Petty v. Tennessee-Missouri Bridge Comm., 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959). *See also*, 72 Am.Jur.2d § 104.

■ ■ As an alternative approach, plaintiff contends that even if the defendant does enjoy the State's immunity from suit, such immunity has been waived by the defendant's agreement of May 31, 1974, to pay to plaintiff the sum of $5,065. As the Supreme Court stated in Petty v. Tennessee-Missouri Bridge Comm., supra: "[T]he conclusion that there has been a waiver of immunity will not be lightly inferred." At 276, 79 S.Ct. at 787. Plaintiff has not shown any authorization by the State of Tennessee for the Director of the Tennessee Office of Economic Opportunity to waive the state's immunity from suit. This court does not consider plaintiff's conclusory allegations to be sufficient proof that the Director was authorized to waive the State's immunity from suit.

Plaintiff's strongest contention is that her suit is authorized by 42 U.S.C. § 2000e. The threshold question in this

case is whether Congress, by amending 42 U.S.C. § 2000e (P.L. 92–261, 1972) abrogated the immunity of the state from suit in federal court when the state engages in unlawful employment practices and a private suit is brought pursuant to 42 U.S.C. § 2000e–5. As originally enacted in 1964, the Equal Employment Opportunities Act excluded states or any political subdivision thereof from its provisions. § 2000e(b) originally read as follows:

"(b) The term 'employer' means a person engaged in an industry affecting commerce who has twenty-five or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person, but such term does not include (1) the United States, a corporation wholly owned by the Government of the United States, an Indian tribe, *or a State or political subdivision thereof* . . ." (emphasis supplied)

When the Act was amended in 1972, the exemption of the states and political subdivisions thereof from the Act was deleted, and § 2000e(a), which defines "person" under the Act, was amended to include "governments, governmental agencies, [and] political subdivisions."

42 U.S.C. § 2000e–5(f) provides in part that:

"Each United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this title."

42 U.S.C. § 2000e–5(g) provides:

"If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate. . . ."

Thus, from the wording of the applicable sections of § 2000e, it would appear that an individual may in appropriate cases sue a state in federal court.

The fly in the ointment, however, is the Eleventh Amendment, which provides:

"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

In the famous case of Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), the Supreme Court construed the Eleventh Amendment to apply to suits against a state brought by that state's own citizens.

■ The history of the Eleventh Amendment is rather complex and confusing.[1] The force of the Eleventh Amendment has been eroded considerably by the use of two legal fictions: (1) suing the state's officials, rather than the state itself, and (2) finding that the state has waived its immunity or consented to the suit.

■ The legal fiction of suing the state's officials germinated in the controversial case of Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714

1. For an incisive and humorous analysis and criticism of the Eleventh Amendment and related cases, see 5 Hous.L.Rev. 1, "Interpretation of the Eleventh Amendment (A Case of the White Knight's Green Whiskers), by Alan D. Cullison, Assistant Professor of Law, University of Houston. See also 33 U.Chi.L. Rev. 331, "Private Suits Against States in Federal Courts," and 2 Ga.L.Rev. 207. "The Eleventh Amendment: Adoption and Interpretation," by Doyle Mathis.

(1908), where the Supreme Court held that where

> "[t]he act to be enforced is alleged to be unconstitutional . . . the use of the name of the state to enforce an unconstitutional act to the injury of complainants is a proceeding without the authority of, and one which does not affect, the state in its sovereign or governmental capacity."

However, even where the fiction of suing the state officials, rather than the state itself, successfully avoids an Eleventh Amendment bar to the suit, it has been held that only prospective injunctive relief can be granted, absent the presence of waiver or consent by the state. Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). *See also,* Jordon v. Gilligan, 500 F.2d 701 (6th Cir. 1974), and Taylor v. Perini, 503 F.2d 899 (6th Cir. 1974). The *Edelman* court, overturning a judgment which ordered retroactive payment of public aid benefits wrongfully withheld by state officials, quoted with approval from Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945):

> "[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." At 464, 65 S.Ct. at 350, 89 L.Ed. at 394.

The *Edelman* court disapproved the Eleventh Amendment holdings of prior cases "to the extent that they are inconsistent with our holding today." Included in this disapproval was the case of Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), which allowed retroactive payment of welfare benefits found to have been unlawfully withheld because of residence requirements which were held violative of equal protection.

■ From the foregoing, it would appear that the Eleventh Amendment bars the way to the recovery in federal court of any retroactive benefits or attorney's fees under 42 U.S.C. § 2000e, unless waiver or consent to suit can be found. As the Supreme Court said in Employees v. Missouri Public Health Department, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973): "The history and tradition of the Eleventh Amendment indicate that by reason of that barrier a federal court is not competent to render judgment against a nonconsenting State." At 284, 93 S.Ct. at 1617.

Regarding the question of waiver, the Supreme Court said in Edelman v. Jordan, *supra*:

> "The question of waiver or consent under the Eleventh Amendment . . . turn[s] on *whether Congress . . . intended to abrogate the immunity in question, and whether the State by its participation in the program authorized by Congress . . . in effect consented to the abrogation of that immunity.* . . . In deciding whether a State has waived its constitutional protection under the Eleventh Amendment, we will find waiver only where stated 'by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction.' Murray v. Wilson Distilling Co., 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909) . . . The mere fact that a State participates in a program through which the Federal Government provides assistance for the operation by the State of a system of public aid is not sufficient to establish consent on the part of the State to be sued in the federal courts." 415 U.S. at 672, 94 S.Ct. at 1360, 39 L.Ed. 2d at 678, 679 (emphasis supplied).

■ ■ A perusal of the legislative history of the 1972 amendment to 42 U.S.C. § 2000e, U.S.Code and Congressional Administrative News. Vol. 2, pp. 2137 et seq. (92nd Congress, 2nd Session, 1972) fails to unearth any specific language to the effect that Congress even considered the Eleventh Amendment implications of the 1972 amendment.

This court is unwilling to assume that Congress intended to abrogate the States' Eleventh Amendment immunity from suit in federal court without even a cursory discussion of the matter. The 1972 amendment to § 2000e is by no means emasculated by the Eleventh Amendment bar to jurisdiction by federal courts in a case such as the one before us. The right to sue the state under § 2000e exists nonetheless. As Justice Marshall noted in his concurring opinion in Employees v. Missouri Public Health Department, *supra*:

> ". . . Congress has the power to lift the State's commonlaw immunity from suit insofar as that immunity conflicts with the regulatory authority conferred upon it in the Commerce Clause . . . While constitutional limitations upon the federal judicial power bar a federal court action by these employees to enforce their rights, the courts of the State nevertheless have an independent constitutional obligation to entertain employee actions to enforce those rights. See Testa v. Katt, 330 U.S. 386, 67 S.Ct. 810, 91 L.Ed. 967 (1947)." At 297, 298, 93 S. Ct. at 1624.

Additionally, § 2000e–5(f) provides that the Attorney General may bring a civil action against a State employer in the appropriate United States District Court. It is generally conceded that the Eleventh Amendment does not apply to suits brought against a state by the United States. United States v. Texas, 143 U.S. 621, 12 S.Ct. 488, 36 L.Ed. 285 (1892).

Even if Congress did intend for the 1972 amendment to § 2000e to have the effect of allowing suit in federal court by private individuals against a state, waiver or consent to suit by the State would have to be found in order to escape the prohibition of the Eleventh Amendment. This court is in agreement with Justice Marshall's position in *Employees, supra,* that:

> ". . . the concept of implied consent or waiver relied upon in Parden

[Parden v. Terminal Ry., 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964), wherein Alabama was found to have impliedly consented to suit in federal court] approaches, on the facts of that case, the outer limit of the sort of voluntary choice which we generally associate with the concept of constitutional waiver. [citations omitted] Certainly, the concept cannot be stretched sufficiently further . . . . In Parden, Alabama entered the interstate railroad business with at least legal notice of an operator's responsibilities and liability under the FELA to suit in federal court, and it could have chosen not to enter at all if it considered that liability too onerous or offensive. It obviously is a far different thing to say that a State must give up established facilities, services, and programs or else consent to a federal suit." At 296, 93 S.Ct. at 1624.

■ In the instant case, this court can find no waiver or consent by the State of Tennessee to suit in federal court under the Civil Rights Act. We note at this point that an argument could be made that the states, in ratifying the Fourteenth Amendment, waived so much of their Eleventh Amendment immunity as conflicts with the Fourteenth Amendment. However, as noted by Professor Charles Alan Wright, it would have been possible in Ex parte Young, *supra*, "to hold that the Fourteenth Amendment qualified the immunity from suit granted states by the Eleventh Amendment, but the Court did not so hold." [2] In light of the Supreme Court's refusal to hold that the Fourteenth Amendment qualifies the Eleventh Amendment immunity of the states, this court does not feel that it has jurisdiction to entertain a suit against a state by a citizen of that state where there has been no waiver or consent by the state. Hans v. Louisiana, *supra*. As we have stated before, defendant Tennessee Office of Economic Opportunity, as a state agency, enjoys the immunity of the State of Tennessee

2. Charles Alan Wright, Handbook of the Law of Federal Courts, (1970), p. 185.

and is thus immune from suit in this court.

If this were a case for prospective injunctive relief, this court would allow plaintiff to amend her complaint to follow the fiction of suing the appropriate state official in order to reach the State. However, since the State of Tennessee has reinstated the plaintiff, it is the determination of this court that no further prospective injunctive relief is necessary. Suit against the Director of the Office of Economic Opportunity in his official capacity would be futile, since under the rationale of Edelman v. Jordan, supra, relief against the Director could not include back wages or attorney's fees payable from the State treasury.

For the above reasons, the case will be dismissed and an order will be entered in compliance with the Memorandum.