**INDEPENDENCE MORTGAGE TRUST, formerly known as USF Investors, a Georgia business trust, by and through its Trustees, Frank J. Hermann, Roger S. Hillas, Stanley H. McCalla, James L. Starnes, and John H. Webster, III, Plaintiffs,**

v.

**Wilton A. WHITE, Sr., Thompson E. White, Richard D. Walker, and Pacific Empire Industries, Inc., Defendants.**

No. 75–938–E.

United States District Court, D. Oregon.

Feb. 17, 1978.

Fred B. Miller, Brown, Hansen & Steenson, P. C., Portland, Or., for plaintiffs.

Frank R. Alley, III, William H. Fowler, Heffernan & Fowler, Medford, Or., for defendant Wilton A. White, Sr.

OPINION

SKOPIL, District Judge:

*Introduction*

Two questions of law are presently before me for decision. First, what is the citizenship, for purposes of diversity jurisdiction, of a real estate investment trust ("REIT")? I hold that the citizenship of a REIT is that of each and every state in which any beneficiary or shareholder[1] is a

---

1. Persons holding proportional ownership interests in a REIT are apparently referred to interchangeably as "beneficiaries" or "shareholders".

citizen. Second, may a district court set aside its own final judgment upon a showing that the court lacked subject matter jurisdiction at the time it entered the judgment? I hold that the court may not so act.

## Background

This action was commenced by Independence Mortgage Trust, a Georgia REIT, "by and through its trustees", who are also named as plaintiffs. The purpose of the action was to enforce certain personal guaranties of a residential subdivision construction loan. For convenience I will refer to plaintiffs collectively as the "REIT".

The REIT sued four individuals. Judgments were entered against each defendant at various stages of the proceedings.

The only defendant concerned with the present motion is Wilton A. White, Sr. ("White"). On March 25, 1977, I filed a memorandum order granting a motion by the REIT for summary judgment against White. After consideration of a claim for attorney fees (as provided for in the applicable loan and guaranty documents), I directed the Clerk to enter judgment against White.

Judgment was entered on June 1, 1977. *White did not appeal*, and so the judgment against him became final on or about July 1, 1977. Fed.R.App.P. 4(a).

On October 11, 1977, White filed the present motion to set aside judgment. Fed. R.Civ.P. 60(b)(4), (6). White argues that this court lacked subject matter jurisdiction at the time the REIT commenced this action because there was not complete diversity of citizenship between the REIT and defendants. White also argues that this court has the power and duty to set aside the judgment at this time.

In deciding this motion I have had the assistance of a series of memoranda filed by each side, as well as helpful oral argument.

## Citizenship of a REIT

In the pretrial order the parties stipulated that there was complete diversity of citizenship between plaintiffs and defendants. Since all parties, as well as myself, were of the opinion that the citizenship of a REIT is that of its trustees (all non-Oregonians in this case) or of its place of organization (Georgia) and principal place of business (not Oregon), I expressly found that the court had subject matter jurisdiction over the controversy[2] between the REIT and defendants (all Oregonians). Memo. Ord. (Mar. 25, 1977) at 1. See 28 U.S.C. § 1332.

By his motion and argument defendant White has for the first time raised the issue of subject matter jurisdiction. I am now persuaded that I applied an erroneous test for the citizenship of a REIT. Following the reasoning of numerous recent district court decisions, I hold that the citizenship of a REIT, for purposes of federal diversity jurisdiction, is that of each shareholder/beneficiary of the REIT. See *Riverside Mem. Mausoleum v. Umet Trust*, 434 F.Supp. 58 (E.D.Pa.1977); *Lee v. Navarro Svgs. Assoc.*, 416 F.Supp. 1186 (N.D.Tex. 1976); *Lincoln Assocs. v. Great American Mort. Investors*, 415 F.Supp. 351 (N.D.Tex. 1976); *Heck v. A. P. Ross Ents.*, 414 F.Supp. 971 (N.D.Ill.1976); *Carey v. U. S. Inds., Inc.*, 414 F.Supp. 794 (N.D.Ill.1976); *Chase Manhattan Mort. & Realty Trust v. Pendley*, 405 F.Supp. 593 (N.D.Ga.1975); *Jim Walter Invs. v. Empire-Madison, Inc.*, 401 F.Supp. 425 (N.D.Ga.1975); *Larwin Mort. Invs. v. Riverdrive Mall*, 392 F.Supp. 97 (S.D.Tex.1975). As of the date I write this opinion, I find no reported court of appeals review of these district court decisions.

The cited cases rely generally on the Supreme Court's holding in *Steelworkers v. Bouligny*, 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965), under which the citizenship of an unincorporated labor union is to be treated as the citizenship of each member of the union. The REIT cases, *supra*,

---

**2.** The amount in controversy exceeded $10,000 by a substantial margin.

note that while a REIT has many characteristics of a corporation (business purpose, free transferability of ownership interests, centralized control, etc.), it is *not* a corporation. Accordingly, the special treatment of 28 U.S.C. § 1332(c) (for diversity purposes, citizenship of corporation deemed to be that of states of incorporation and principal place of business) should be denied to a REIT in the same way it is denied to an unincorporated union under *Bouligny.*

These cases also note that while a traditional trust (usually involving gratuitous *inter vivos* or testamentary transfers) is deemed to have the citizenship of its trustees and not its beneficiaries, a REIT is not such a traditional trust. Rather, it has numerous characteristics (business purpose, free transferability of ownership interests, right of beneficiaries to select and control trustees, etc.) not found in traditional trusts.

Thus a REIT is neither a corporation nor a trust for diversity purposes. It is an association, sharing the citizenship of each shareholder/beneficiary. Since ownership of a REIT is usually widely distributed among investors in many states, the effect of this rule is that it

". . . almost inevitably denies a business trust access to the federal courts unless the cause of action states a federal claim." *Carey v. U. S. Inds., Inc., supra,* 414 F.Supp. at 795.

In the present case, the REIT concedes that at the time this action was commenced approximately 1.8% (91 of 4,988) of its shareholder/beneficiaries were Oregon citizens. Pl.Supp.Memo. (Jan. 26, 1978) at 2. The REIT was thus a citizen of Oregon—among other states—for purposes of diversity jurisdiction. Since defendants were Oregonians, I was in error when I found that the court had subject matter jurisdiction of this action.

*Relief from Judgment*

 While I agree with defendant White that my finding of jurisdiction was in error, I agree with plaintiff REIT that the court lacks authority to set aside the judgment.

The starting point of my analysis is that this court is one of limited subject matter jurisdiction. As the REIT concedes, subject matter jurisdiction may not be conferred on the court even by consent of the parties. Pl.Supp.Memo. (Jan. 26, 1978) at 1. Rather, this court may act only within the jurisdiction provided for by Act of Congress (assuming, of course, that Congress itself does not exceed constitutional limitations in conferring jurisdiction on the court). *U.S. Const.,* Art. III, § 1. See, e. g., *Glidden Corp. v. Zdanok,* 370 U.S. 530, 82 S.Ct. 1459, 8 L.Ed.2d 671 (1962); *Lockerty v. Phillips,* 319 U.S. 182, 63 S.Ct. 1019, 87 L.Ed. 1339 (1943).

This jurisdictional limitation cannot be waived by the parties or the court, for:

"*Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter,* the court shall dismiss the action." Fed. R.Civ.P. 12(h)(3) (emphasis added).

Thus, even if it first appears while on appeal that the district court lacked subject matter jurisdiction, the appellate court is bound to remand with instructions to dismiss.

The problem presently before me is different, however. Here the matter of subject matter jurisdiction was not actively litigated, nor was it raised on appeal (for there was no appeal). Rather, the court found that it had jurisdiction and, after extensive proceedings, entered judgment for plaintiff. Under these circumstances I hold that the finding of jurisdiction is *res judicata* and cannot be reversed by this court (or apparently by any other court).

A closely related situation was presented to the Ninth Circuit in *Yanow v. Weyerhaeuser Steamship Co.,* 274 F.2d 274 (9th Cir. 1959), *cert. denied,* 362 U.S. 919, 80 S.Ct. 671, 4 L.Ed.2d 739 (1960). In that case the district court (this district, as a matter of fact) originally entered judgment on the merits on a longshoreman's claim for personal injury. The court of appeals reversed. 250 F.2d 74 (9th Cir. 1958). The Supreme Court denied certiorari. 356 U.S. 937, 78 S.Ct. 779, 2 L.Ed.2d 812 (1958).

After all this occurred, the losing party (the original appellee) filed a motion in the court of appeals to vacate its judgment of reversal on the grounds (raised for the first time) that the original notice of appeal was not timely filed, the appellate courts therefore having lacked subject matter jurisdiction. The court denied the motion, holding that its earlier ruling on the merits was necessarily an implied determination that it had jurisdiction. The court went on to say:

> "If this final adjudication was erroneous, it was subject to correction upon review in a higher court, or upon rehearing in this court. But such a judgment, whether erroneous or not, becomes *res judicata*." *Id.*, 274 F.2d at 277.

Later, in *dicta* specifically applicable to the present case, the court observed:

> ". . . [I]t may properly be said that existence of diversity of citizenship . . . is a prerequisite to the jurisdiction of a federal court; but it is also clear that if the court in question determines that these requirements are satisfied, and that it has jurisdiction, *it is certain that such a determination, even if demonstrably wrong*, is not a nullity or a truly void judgment, *for it cannot be questioned collaterally*." *Id.*, 274 F.2d at 279 (emphasis added).

The many cases defendant cites involving dismissals by a court upon finding that it lacked subject matter jurisdiction almost all involve action taken prior to final judgment (*i. e.*, while still before the district court or while on direct appeal). See, e. g., *American Fire & Cas. Co. v. Finn*, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951) (direct appeal); *Eisler v. Stritzler*, 535 F.2d 148 (1st Cir. 1976) (jurisdiction first attacked in district court before entry of judgment); *Basso v. Utah P & L Co.*, 495 F.2d 906 (10th Cir. 1974) (direct appeal; motion to vacate judgment filed along with timely notice of appeal); *Travis Mills Corp. v. Square D. Co.*, 67 F.R.D. 22 (E.D.Pa.1975) (jurisdiction first attacked in district court in timely motions for judgment NOV or new trial); *Blanchard v. Terry & Wright, Inc.*, 218 F.Supp. 910 (D.Ky.1963), *aff'd*, 6 Cir., 331 F.2d 467 (1964), *cert. denied*, 379 U.S. 831, 85 S.Ct. 62, 13 L.Ed.2d 40 (1964) (jurisdiction first attacked in district court during time to appeal). But see *Jordan v. Gilligan*, 500 F.2d 701 (6th Cir. 1974), *cert. denied*, 421 U.S. 991, 95 S.Ct. 1996, 44 L.Ed.2d 481 (1975) (judgment vacated on Rule 60(b) motion upon Eleventh Amendment grounds).

Once final judgment is entered, however, the situation is different. At this stage, when the proceedings are completed, the federal court has expressly or impliedly found that it has subject matter jurisdiction and the parties have exhausted or waived (by inaction) their rights to review such finding. The finding is thus *res judicata*. Put another way, the district court has jurisdiction to determine its subject matter jurisdiction over an action. The general principle is stated by Professor Moore as follows:

> "Apart, then, from the case where the court's action is a usurpation of power, the general proposition is that if the federal court . . . has the requisite jurisdiction over the defendant or res as the type of action warrants, it has jurisdiction to determine whether it has jurisdiction over the subject matter. . . ."

7 Moore's Federal Practice ¶ 60.25[2] at 306.

See also 11 C. Wright & A. Miller, Federal Practice & Procedure § 2862 at 201.

A judgment is *void* and thus subject to collateral attack, or to vacation under Fed.R.Civ.P. 60(b)(4), when the finding by the district court of subject matter jurisdiction is a "rare instance of a clear usurpation of power." *Lubben v. Selective Service System*, 453 F.2d 645, 649 (1st Cir. 1972). Such a usurpation occurs when a court purports to act beyond its competency, that is, when it acts in a *type* of case not within its power. See *Restatement*, Judgments § 7 (1942). An apparent example of such "usurpation" occurred in *Jordan v. Gilligan, supra.* But where a court acts in a type of case within its competency (e. g., diversity case), has personal jurisdiction over the parties, and erroneously finds that the particular case falls within its general grant of

authority, the judgment is not void. A comment to the Restatement covers the precise situation as follows:

"Thus, if an action is brought in a federal court on the ground of diversity of citizenship, the judgment is not void although in fact there was not the necessary diversity of citizenship." *Restatement, supra,* § 7, comment c.

An example of the application of the general rule giving validity to judgments founded upon erroneous findings of subject matter jurisdiction is *Chicot County Drainage Dist. v. Baxter State Bank,* 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940). In that case the drainage district brought an action in federal court pursuant to an Act of Congress relating to municipal bonds, and judgment was rendered for the district. Later, in an unrelated action, the Supreme Court held that the statute involved was unconstitutional. Finally, in a third action, the Supreme Court held that the judgment in the first action was *res judicata* even though the finding of jurisdiction in the first action was based upon an invalid statute. As stated by the Court:

"The lower federal courts are all courts of limited jurisdiction, that is, with only the jurisdiction which Congress has prescribed. But none the less they are courts with authority when parties are brought before them in accordance with the requirements of due process, to determine whether or not they have jurisdiction to entertain the cause and for this purpose to construe and apply the statute under which they are asked to act. Their determinations of such questions, while open to direct review, may not be assailed." *Id.,* 308 U.S. at 376, 60 S.Ct. at 319.

It should be noted that the original trial court in *Chicot County* made an error of law in determining its jurisdiction. I did the same. Nevertheless, the Supreme Court held that the *Chicot County* judgment was not void.

Other Supreme Court cases to the same general effect are: *Jackson v. Irving Trust Co.,* 311 U.S. 494, 61 S.Ct. 326, 85 L.Ed. 297 (1941) (if district court errs in ruling on issue of subject matter jurisdiction, remedy is by appeal); *Noble v. Union River Logging Co.,* 147 U.S. 165, 13 S.Ct. 271, 37 L.Ed. 123 (1893) (finding of diversity, *inter alia,* cannot be attacked collaterally); *Des Moines Navig. & R.R. Co. v. Iowa Homestead Co.,* 123 U.S. 552, 8 S.Ct. 217, 31 L.Ed. 203 (1887) (even where it is conceded that diversity was lacking in a prior action, prior judgment still *res judicata* since jurisdiction a matter to be determined with finality on appeal of prior action).

In conclusion, I note that two competing judicial policies are involved in deciding the present question. On the one hand, there is the policy recognizing the limited jurisdiction of the federal courts. On the other hand, there is the policy favoring finality of judgments. Under the circumstances of this case, the latter policy must prevail over the former. "To hold otherwise would destroy the certainty which allows controversies to be deemed judicially concluded." *Lubben v. Selective Service System, supra,* 453 F.2d at 650.

*Conclusion*

I am today entering a separate order in conformity with this opinion.