**In re Robert McKnight PARDEE and Darlene Daigle–Pardee, Debtors.**

**GREAT LAKES HIGHER EDUCATION CORP., Appellant,**

v.

**Robert McKnight PARDEE and Darlene Daigle–Pardee, Appellees.**

**BAP No. AZ–97–1038–RYKJ.**
**Bankruptcy No. 92–02586–TUC–LO.**
**Adversary No. 96–00186.**

United States Bankruptcy Appellate Panel the Ninth Circuit.

March 31, 1998.

Lloyd J. Blaney, Dew & Blaney, Madison, WI, for Great Lakes Higher Education Corporation.

James L. Robinson, Tucson, AZ, for Robert McKnight Pardee.

BEFORE: RYAN, KLEIN [1], and JONES, Bankruptcy Judges.

## *OPINION*

JOHN E. RYAN, Bankruptcy Judge.

Robert and Darlene Pardee ("Appellees") filed a chapter 13 plan (the "Plan") that purported to discharge postpetition interest on a nondischargeable student loan debt (the "Discharge Provision") owed to Great Lakes Higher Education Corp. ("Appellant"). Appellant failed to object to the Plan, and the

Plan was subsequently confirmed. After Appellees received their chapter 13 discharge, Appellant attempted to collect interest that had accrued on the unpaid principal after the bankruptcy petition was filed. Appellees filed a motion (the "Motion") to enforce the discharge and to enjoin permanently Appellant from attempting to collect postpetition interest on the student loan debt. The bankruptcy court granted the Motion and enjoined Appellant from further collection activity. We AFFIRM.

## I. FACTS

The facts are undisputed. On August 14, 1992, Appellees filed their chapter 13 bankruptcy petition. On September 9, 1992, Appellant filed its proof of claim (the "Claim") in the amount of $26,015.22. The Claim did not seek either prepetition or postpetition interest.

The Plan proposed to pay the chapter 13 trustee (the "Trustee") $515 per month for 60 months for a total of $30,900. The Plan also purported to pay Appellant's student loan debt as follows:

e. Education Loan(s): The Debtors have two separate obligations for their student loans which are as follows:

. . . .

(2) *Great Lakes Higher Education*, 2401 International Way, Madiscon [sic] WI 53704 in the amount of $26,235.00. This obligation was incurred by Robert McKnight Pardee and [is] in default. Great Lakes [Higher] Education shall receive the total amount of $26,235.00 for its claim *and any remaining unpaid amounts, if any, including any claims for interest, shall be discharged by the plan.*

(second emphasis added).

On June 8, 1993, the Plan was confirmed (the "Confirmation Order"). The Confirmation Order was entered on August 5, 1993.

---

1. Hon. Christopher M. Klein, Bankruptcy Judge for the Eastern District of California, sitting by designation.

Appellant failed to object to its treatment under the Plan.[2]

On April 9, 1996, Appellees received their chapter 13 discharge after paying all obligations pursuant to the Plan. After Appellant received full payment of its principal and prepetition interest under the Plan, Appellant demanded and attempted to collect $6,095.92 in postpetition interest. Appellees filed a motion to reopen the bankruptcy case, which was granted, and filed the Motion requesting that the bankruptcy court enforce the discharge and permanently enjoin Appellant from collecting postpetition interest on the student loan debt.

On January 6, 1997, the bankruptcy court granted the Motion by minute order and entered its Order to Enforce Discharge and Permanent Injunction (the "Injunction Order") on January 29, 1997. The bankruptcy court held that: (1) Appellant was bound by the language of the Plan and its failure to request postpetition interest in the Claim or object to the Discharge Provision constituted a waiver of any claim for postpetition interest; (2) Appellant had no claim for postpetition interest because the principal and prepetition interest on the nondischargeable student loan debt was paid in full under the Plan; and (3) Bankruptcy Code (the "Code")[3] § 502(b)(2) did not permit Appellant to assert a nondischargeable claim for postpetition interest on the student loan because the debt was paid in full through the Plan.

Accordingly, the bankruptcy court ordered that Appellant "cease and desist in its collection efforts against Debtors ..." and "file the appropriate documentation with the various taxing credit bureaus, governmental agencies and taxing agencies that indicates that the student loan has been paid in full." The bankruptcy court also ordered Appellant to pay attorney's fees and costs to Appellees.

On January 21, 1997, Appellant filed a premature notice of appeal .[4]

## II. ISSUES ON APPEAL

1. Whether the bankruptcy court erred in holding that Appellant was precluded from collecting postpetition interest on the Claim because the Claim was paid in full under the Plan.

2. Whether the bankruptcy court erred in holding that Appellant, who failed to object to the Plan provision discharging postpetition interest on the Claim, was bound by the Plan even though the provision was contrary to the Code.

## III. STANDARD OF REVIEW

We review conclusions of law, including the bankruptcy court's interpretation of the Bankruptcy Code, de novo. *See Grey v. Federated Group, Inc. (In re Federated Group, Inc.),* 107 F.3d 730, 732 (9th Cir.1997) (citing *Abele v. Phoenix Suns Ltd. Partnership (In re Harrell),* 73 F.3d 218, 219 (9th Cir.1996)).

## IV. DISCUSSION

A. *Appellant Was Not Precluded From Collecting Postpetition Interest On The Claim Because The Claim Was Paid In Full Under The Plan.*

The bankruptcy court held that Appellant's claim for postpetition interest on the Claim was discharged or extinguished by Appellees' completion of the Plan, when the principal and prepetition interest was "paid in full." We disagree.

Student loan debts are nondischargeable in bankruptcy unless either the payment first became due more than seven years before the date of filing the bankruptcy petition, or the debtor can prove that excepting the debt from discharge will impose an undue

---

2. The bankruptcy court found that Appellant received notice of its treatment under the Plan. Appellant does not challenge this finding.

3. The Code is set forth in 11 U.S.C. §§ 101–1330 (1998).

4. The notice of appeal was timely filed pursuant to Federal Rule of Bankruptcy Procedure 8002(a). *See* Fed.R.Bankr.P. 8002(a) ("A notice of appeal filed after the announcement of a decision or order but before entry of the judgment, order, or decree shall be treated as filed after such entry and on the date thereof.").

hardship. *See* 11 U.S.C. § 523(a)(8).[5] This nondischargeability provision applies in chapter 13. Section 1328 states in pertinent part:

> (a) As soon as practicable after completion by the debtor of all payments under the plan, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, *except any debt —*
>
> . . . .
>
> (2) *of the kind specified in paragraph (5), (8), or (9) of section 523(a) of this title;*
>
> . . .

11 U.S.C. § 1328(a)(2) (emphasis added).

However, the Code is silent as to whether postpetition interest on a nondischargeable student loan is nondischargeable in bankruptcy. The seminal case on this issue is *Bruning v. United States*, 376 U.S. 358, 84 S.Ct. 906, 11 L.Ed.2d 772 (1964). In *Bruning*, a case decided under the Bankruptcy Act of 1898, the Supreme Court held that although postpetition interest on a nondischargeable tax debt could not be paid by the bankruptcy estate, it nevertheless survived bankruptcy and could be recovered personally from the debtor. *Id.* at 361, 84 S.Ct. at 908. The Court reasoned that "interest is an integral part of a continuing debt," and becomes part of the debt itself. *Id.* at 360, 84 S.Ct. at 908. The Court distinguished between the disallowance of postpetition interest against the bankruptcy estate on a nondischargeable debt, and the creditor's right to recover postpetition interest on a nondischargeable debt from the debtor personally after the discharge has been entered. *Id.* at

362–63, 84 S.Ct. at 908–09. The Court also recognized that the reasons for denying postpetition interest as a claim against the bankruptcy estate, "the avoidance of unfairness as between competing creditors and the avoidance of administrative inconvenience," are inapplicable to an action brought against the debtor personally. *Id.*

■ Here, the bankruptcy court erroneously held that *Bruning* was inapplicable to the instant case because *Bruning* was decided under the Bankruptcy Act and is distinguishable because the "allowed" portion of the nondischargeable debt was "paid in full" through the bankruptcy estate, whereas in *Bruning*, only part of the underlying debt was paid. This conclusion is not supported by principles of statutory construction or stare decisis. Unless Congress expressly manifests its intent to change well-established judicial interpretation of the bankruptcy laws as they existed prior to enactment of the Bankruptcy Code in 1978, we must presume that pre-Code interpretations of the Act have survived the enactment. *See United States v. Ron Pair Enter., Inc.*, 489 U.S. 235, 244–45, 109 S.Ct. 1026, 1032, 103 L.Ed.2d 290 (1989); *Rodriguez v. United States*, 480 U.S. 522, 525, 107 S.Ct. 1391, 1393, 94 L.Ed.2d 533 (1987) (per curiam). As the Eighth Circuit aptly stated:

> Taken together, sections 502 and 523 simply demonstrate Congress' intent to codify the general principle that applied under *Bruning*. Postpetition interest is disallowed against the bankruptcy estate under section 502. Priority tax claims remain nondischargeable for individual debtors. . . . Thus, postpetition interest is nondischargeable and the [debtors] remain lia-

---

5. Section 523(a)(8) states as follows:
   (a) A discharge under section 727, 1141, 1228(a) 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
   . . . .
   (8) for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship, or stipend, unless—
   (A) such loan, benefit, scholarship, or stipend overpayment first became due more than 7 years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition; or
   (B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.
   11 U.S.C. § 523(a)(8).
   Neither limitation expressed in §§ 523(a)(8)(A) or (B) are applicable here.

ble for that interest subsequent to the bankruptcy proceedings.

*Hanna v. United States (In re Hanna)*, 872 F.2d 829, 831 (8th Cir.1989).

■ Additionally, although the Ninth Circuit has not addressed whether the *Bruning* rule continues to apply under the Code, five circuit courts have held that *Bruning* remains good law under the Code. *See Leeper v. Pennsylvania Higher Educ. Assistance Agency (In re Leeper)*, 49 F.3d 98, 101–02 (3d Cir.1995); *Fullmer v. United States (In re Fullmer)*, 962 F.2d 1463, 1468 (10th Cir. 1992); *Burns v. United States (In re Burns)*, 887 F.2d 1541, 1543 (11th Cir.1989); *Hanna*, 872 F.2d 829, 831 (8th Cir.1989); and *Bradley v. United States*, 936 F.2d 707, 709–10 n. 3 (2d Cir.1991) (stating in dictum that the weight of authority supports the view that a debtor is personally liable for postpetition interest on unpaid taxes). Accordingly, we join the unanimous circuit court authority that has addressed this issue and conclude that *Bruning* retains its vitality under the Bankruptcy Code.

■ Furthermore, the overwhelming majority of bankruptcy courts have extended the Supreme Court's *Bruning* principle to apply to postpetition interest on nondischargeable student loans. *See Wagner v. Ohio Student Loan Comm'n (In re Wagner)*, 200 B.R. 160, 163 (Bankr.N.D.Ohio 1996); *In re Sullivan*, 195 B.R. 649, 652 (Bankr. W.D.Tex.1996); *Branch v. Unipac/Nebhelp (In re Branch)*, 175 B.R. 732 (Bankr.D.Neb. 1994); *In re Shelbayah*, 165 B.R. 332, 337 (Bankr.N.D.Ga.1994); *Ridder v. Great Lakes Higher Educ. Corp. (In re Ridder)*, 171 B.R. 345, 347–48 (Bankr.W.D.Wis.1994); and *Jordan v. Colorado Student Loan Program (In re Jordan)*, 146 B.R. 31, 32–33 (D.Colo.1992). Because we find no reason to limit the *Bruning* principle to nondischargeable tax debts, we conclude that postpetition interest on a nondischargeable student loan debt is nondischargeable under the Code. Finally, because

chapter 13 specifically incorporates the non-dischargeability provisions of § 523(a)(8), the *Bruning* principle also applies in chapter 13.

We turn next to whether postpetition interest on the Claim was discharged or extinguished because the Plan paid the Claim in full. The bankruptcy court, citing *In re Wasson*, 152 B.R. 639 (Bankr.D.N.M.1993), held that full payment of the Claim under the Plan discharged any claim for postpetition interest. We disagree with the *Wasson* holding and conclude that the bankruptcy court's reliance on *Wasson* was erroneous.

In *Wasson*, the chapter 13 plan provided for full payment of principal and prepetition interest on a nondischargeable student loan debt. The student loan creditor objected to the debtor's chapter 13 plan because it did not provide for postpetition interest. The court overruled the objection on the basis that because postpetition interest is disallowed under § 502(b)(2), postpetition interest on student loans may be discharged when the allowed claim is paid in full.

However, the *Wasson* court confused the concept of claim disallowance under § 502(b)(2), in which a claim for unmatured interest cannot be paid from the bankruptcy estate, with the concept of nondischargeability under §§ 523(a)(8) and 1328(a)(2). Section 502(b)(2) clearly disallows [6] recovery of unmatured interest from the bankruptcy estate. Therefore, this rule bars recovery from the bankruptcy estate of postpetition interest on a nondischargeable debt. *See* H.R.Rep. No. 95–595, 95th Cong., 2nd Sess. 62 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5848, 6308–09. However, § 502(b)(2) does not proscribe recovery from the debtor personally for nondischargeable debts that are not paid from the bankruptcy estate. Because postpetition interest on a nondischargeable debt cannot be paid from the bankruptcy estate, the holder of the unpaid claim may seek to recover on that claim once the discharge injunction has been lifted (i.e., once plan payments have been completed in a chapter 13 case). While

---

**6.** The term "disallowed" is not entirely accurate. Unsecured creditors are entitled to postpetition interest on their claims pursuant to § 726(a) if the bankruptcy estate is solvent. Because chapter 13 adopts the "best interest of creditor's test" to provide creditors with at least the amount that

they would receive if the bankruptcy estate were liquidated under chapter 7, an unsecured creditor is entitled to collect postpetition interest in chapter 13 if the bankruptcy estate is solvent. *See* 11 U.S.C. § 1325(a)(4).

**922**

the discharge provision of § 1328 generally discharges all debts provided for by the plan or disallowed under § 502, student loan debts are specifically excepted from discharge. *See* 11 U.S.C. § 1328(a)(2). Thus, applying the *Bruning* principle, postpetition interest on nondischargeable student loan debts are also excepted from discharge under § 1328(a)(2).

Additionally, *Wasson* overlooked the distinction between "claims" and "allowed claims." Under §§ 523(a)(8) and 1328(a)(2), student loan "debts" are excepted from discharge. Debt is defined as "liability on a claim," 11 U.S.C. § 101(12), and "claim" is defined as a "right to payment, *whether or not such right is ... matured [or] unmatured.*" *Id.* § 101(5)(A) (emphasis added). Although the Code precludes postpetition interest on an "allowed claim," §§ 523(a)(8) and 1328(a)(2) do not limit their exceptions from discharge to an allowed claim.

We note that Congress used the term "allowed claims" in certain parts of the Code. *See, e.g.,* §§ 726(a) and 1129(b)(2). These sections support the general rule that only "allowed claims" will be paid through the bankruptcy estate. However, Congress, by not using the term "allowed claim" in § 1328(a)(2), did not intend to limit the dischargeability provisions to "allowed claims." Certainly, Congress knew how to limit liability for nondischargeable debts to allowed claims if this was its intent. However, the dischargeability exceptions extend to certain "debts," which are defined as rights to payment, "whether matured or unmatured." Accordingly, § 502(b)(2) only precludes the payment of postpetition interest from the bankruptcy estate. Once the discharge injunction is lifted at the completion of chapter 13 plan payments, the student loan creditor may collect the unpaid interest on its nondischargeable debt from the debtor personally.

■ Similarly, we disagree with the bankruptcy court that one hundred percent pay-

ment of principal and prepetition interest pursuant to the Plan extinguished or discharged postpetition interest on the Claim. The Claim was not "paid in full" because Appellant did not receive postpetition interest. Only the "allowed claim" was fully paid. Consequently, Appellant was not precluded from recovering postpetition interest on the Claim just because Appellees completed their Plan payments. Although we disagree with the bankruptcy court's reasoning, as discussed below, we affirm on other grounds.

### B. *The Plan Was Res Judicata Regarding The Discharge Provision .*

Appellant argues that the bankruptcy court erroneously concluded that Appellant waived any claim for postpetition interest and is bound by the Discharge Provision in the Plan. We disagree.

#### 1. *Appellant's Failure To Object To The Discharge Provision Constituted A Waiver Of Its Right To Collect Postpetition Interest On The Claim.*

■ Generally, a creditor is not required to object to a plan provision that does not purport to pay postpetition interest because any attempt to collect postpetition interest through the bankruptcy estate is precluded under § 502(b)(2). *See Ridder,* 171 B.R. at 347.[7] However, when the chapter 13 plan contains a provision that purports to discharge a nondischargeable debt in violation of §§ 523(a) and 1328(a), the student loan creditor with notice of this plan provision must object to the plan or appeal the confirmation order. The failure to do so constitutes a waiver of its right to collaterally attack the confirmed plan postconfirmation on the basis that the plan contains a provision contrary to the Code. The creditor, therefore, is bound by the terms of the confirmed plan pursuant to § 1327(a).

■ Under § 1327(a), "[t]he provisions of a confirmed plan bind the debtor and each

7. Similarly, a creditor is not required to request postpetition interest in its proof of claim because postpetition interest is disallowed under § 502(b)(2), and thus, such a request would be futile. *See United States v. River Coal Co., Inc.,* 748 F.2d 1103, 1108 (6th Cir.1984); *Wagner,* 200

B.R. at 165 (holding that a creditor is not barred from collecting postpetition interest merely because it did not file a claim for postpetition interest which is expressly made optional under § 1305).

creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). "'The purpose of § 1327(a) is the same as the purpose served by the general doctrine of res judicata. There must be finality to a confirmation order so that all parties may rely upon it without concern that actions which they may thereafter take could be upset because of a later change or revocation of the order....'" *In re Walker,* 128 B.R. 465, 467 (Bankr.D.Idaho 1991) (quoting 5 LAWRENCE P. KING ET AL., COLLIER ON BANKRUPTCY ¶ 1327.01[1] (15th ed.1990)).

■ The concept of the preclusive effect of final orders is a basic principle of American jurisprudence. In *Stoll v. Gottlieb,* 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938), the Supreme Court addressed the enforceability of a provision in a corporate debtor's plan that provided for the cancellation of a bond guaranty. The creditor did not object to the plan. However, after confirmation, the creditor filed a state court action to recover on the guaranty. The Supreme Court held that the finality of the bankruptcy confirmation order barred the creditor from litigating its claim. *Id.* at 171–72, 59 S.Ct. at 137–38. The plan was res judicata even though the bankruptcy court did not have subject matter jurisdiction to release the guarantor on his guaranty of the debtor's obligations. *Id.* at 171 & n. 8, 59 S.Ct. at 137 & n. 8.

Similarly, in *Celotex Corp. v. Edwards,* 514 U.S. 300, 313, 115 S.Ct. 1493, 1501, 131 L.Ed.2d 403 (1995), the Supreme Court affirmed its principle enunciated in *Stoll* that a party that does not appeal a final order is precluded from collaterally attacking that order. In *Celotex,* the appellees filed suit in the United States District Court for the Northern District of Texas against Celotex and others alleging asbestos-related injuries. The district court entered a $281,025.80 judgment in favor of appellees and against Celotex. *Id.* at 302, 115 S.Ct. at 1493. Celotex posted a supersedeas bond to stay execution of the judgment while it appealed the judg-

ment. The Fifth Circuit affirmed, thereby rendering appellant's judgment final. *Id.*

Celotex subsequently filed a chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Middle District of Florida. In addition to the automatic stay, the bankruptcy court exercised its equitable powers under § 105(a) and issued an injunction "to augment the protection afforded Celotex by the automatic stay." *Id.* at 303, 115 S.Ct. at 1493.

Appellees then filed a motion in the district court seeking permission to execute against the surety on the bond. *Id.* Celotex brought to the district court's attention the fact that the bankruptcy court had reaffirmed the § 105 injunction "and made clear that the injunction prohibited judgment creditors like respondents from proceeding against sureties without the Bankruptcy Court's permission." *Id.* Despite the bankruptcy court's reaffirmation and clarification of the § 105 injunction, the district court permitted appellees to execute on the bond against the surety. *Id.* at 304, 115 S.Ct. at 1497.

The Fifth Circuit affirmed, holding that the § 105 injunction issued by the bankruptcy court was issued in error. *Id.* at 305, 115 S.Ct. at 1497–98. The court held that although the bankruptcy court had jurisdiction to stay proceedings involving third parties, the injunction was issued in error because the supersedeas bond was posted "'to cover precisely the type of eventuality which occurred in this case, insolvency of the judgment creditor.'" *Id.* (citing *Edwards (Edwards II) v. Armstrong World Indus., Inc.,* 6 F.3d 312, 319 (5th Cir.1993)).

The United States Supreme Court accepted certiorari and reversed. The Court stated:

We have made clear that "'[i]t is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected.'" [citations omitted]. If respondents believed the Section 105 Injunction was improper, they should have challenged it in the Bankruptcy Court, like other similarly situated bonded

judgment creditors have done.... If dissatisfied with the Bankruptcy Court's ultimate decision, respondents can appeal "to the district court for the judicial district in which the bankruptcy judge is serving," ... and then to the Court of Appeals for the Eleventh Circuit.... Respondents chose not to pursue this course of action, but instead to collaterally attack the Bankruptcy Court's Section 105 Injunction in the Federal Courts in Texas. This they cannot be permitted to do without seriously undercutting the orderly process of the law.

*Id.* at 313. Thus, *Celotex* enforces the basic principle enunciated in *Stoll* that a final order that is not appealed cannot be collaterally attacked in a later proceeding even if the order was entered in error.

The Ninth Circuit recently addressed the issue of the binding effect of a chapter 11 plan of reorganization. In *Trulis v. Barton*, 107 F.3d 685 (9th Cir.1995), several creditors challenged a provision in a confirmed plan that released consenting creditors' claims against the debtor's principals. The creditors, postconfirmation, argued that the release provisions were not enforceable under state law. The Ninth Circuit rejected this argument and held that "[s]ince the plaintiffs never appealed the bankruptcy court's confirmation order, the order is a final judgment and plaintiffs cannot challenge the bankruptcy court's jurisdiction over the subject matter." *Id.* at 691. The court also stated:

"Creditors who do not wish to release third party debtors pursuant to the principal debtor's plan of reorganization should object to confirmation of the plan on the ground that such a plan provision is violative of section 524 and not within the power, even jurisdiction, of the bankruptcy

court.... The point is that only a direct attack is available and collateral attack is unavailable."

*Id.* (quoting 5 LAWRENCE P. KING ET AL., COLLIER ON BANKRUPTCY ¶ 1141.01[1] n. 17a (15th ed.1995)).[8]

Additionally, this reasoning has been applied to confirmed chapter 13 plans. In *In re Gregory*, 705 F.2d 1118, 1120 (9th Cir.1983), the bankruptcy court confirmed the debtor's chapter 13 plan that provided for no payment to unsecured creditors and a discharge of all debts. Nobody objected to the plan at the confirmation hearing. However, two months after the plan was confirmed, Lawrence Tractor Co., an unsecured creditor, filed a complaint to determine the dischargeability of a debt for a number of reasons including the allegation that "only debts 'provided for' in a plan are dischargeable under section 1328(a), and a debt for which zero payment is proposed is not so provided for." *Id.* The Ninth Circuit stated:

[T]his court need not rule on the legality of zero-payment plans in general or of Gregory's in particular. The order confirming the plan has become final. Lawrence's failure to raise this objection at the confirmation hearing or to appeal from the order of confirmation should preclude its attack on the plan or any provision therein as illegal in a subsequent proceeding.

*Id.* at 1121.

We have similarly recognized the finality of confirmation orders. In *Ground Sys., Inc. v. Albert (In re Ground Sys., Inc.)*, 213 B.R. 1016 (9th Cir. BAP 1997), the bankruptcy court confirmed the chapter 11 trustee's amended plan of reorganization. The plan required the case to remain open until the

---

8. *See also Boundary County, Idaho v. Woldson*, 144 F.2d 17, 20 (9th Cir.1944) (" 'Whether the issues determined by the Idaho decree were rightly or wrongly determined, is no longer open to inquiry having been rendered by a court which had jurisdiction to render it, and having long since become final, that decree, even though erroneous, is valid and conclusive on the parties thereto and all persons claiming under them.' " (citations omitted)), *cert. denied*, 324 U.S. 843, 65 S.Ct. 678, 89 L.Ed. 1405 (1945); *Carolco Television Inc. v. National Broadcasting, Co. (In re De Laurentiis Entertainment Group Inc.)*, 963 F.2d 1269, 1275 n. 13 (9th Cir.) (recognizing, in dictum, that a plan of reorganization may bind creditors even if it is legally erroneous), *cert. denied*, 506 U.S. 918, 113 S.Ct. 330, 121 L.Ed.2d 249 (1992). *Cf. Western Equities, Inc. v. Harlan*, 783 F.2d 839, 840 (9th Cir.1986) (holding that because the plan did not clearly provide that the debtor intended to disregard the terms of a secured promissory note on debtor's residence, the creditor was not bound by the plan provision to the extent that it purported to modify its secured claim).

plan was fully consummated. No one objected at confirmation to this provision. However, postconfirmation, the debtor filed a motion for an order granting a final decree. An unsecured creditor opposed the motion arguing that the plan expressly authorized the estate to remain open until all plan payments were made. The bankruptcy court denied the motion and stated that, although the plan provision is unacceptable and in conflict with the Code and should not have survived confirmation, once the plan had been confirmed, the specific provisions of the plan must be carried out. *Id.* at 1018.

We affirmed the bankruptcy court's order denying the request for a final decree. We held that the plan did not violate the Code, however, "[e]ven if we agreed with the bankruptcy court that the plan violated the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, we agree with ASI [unsecured creditor] that it was proper for the bankruptcy court to give res judicata effect to the plan's terms." *Id.* at 1019. We followed the holdings of *Trulis,* 107 F.3d at 691, *Republic Supply Co. v. Shoaf,* 815 F.2d 1046, 1049–50 (5th Cir.1987), and *Bowen v. United States (In re Bowen),* 174 B.R. 840, 847–48 (Bankr.S.D.Ga.1994), which stand for the proposition that a plan provision that is contrary to the Code or is otherwise illegal may not be challenged postconfirmation for the first time.[9] Thus, the finality of confirmation orders is a bedrock principle of bankruptcy law in the Ninth Circuit.

■ While the Plan should not have been confirmed with the Discharge Provision, the Plan is res judicata as to all issues that could have or should have been litigated at the confirmation hearing. *See Heritage Hotel Partnership I, Ltd. v. Valley Bank of Nevada (In re Heritage Hotel Partnership I),* 160 B.R. 374, 377 (9th Cir. BAP 1993) ("It is now well-settled that a bankruptcy court's confirmation order is a binding, final order, accorded full res judicata effect and precludes the raising of issues which could or should have

been raised during the pendency of the case, such as typical lender liability causes of action.") (citing *Eubanks v. F.D.I.C.,* 977 F.2d 166, 171 (5th Cir.1992)), *aff'd,* 59 F.3d 175 (9th Cir.1995); *In re Szostek,* 886 F.2d 1405, 1406 (3d Cir.1989) ("[A]lthough prior to confirmation the bankruptcy court and trustee do have a responsibility to verify that a Chapter 13 plan complies with the Bankruptcy Code provisions, after the plan is confirmed the policy favoring the finality of confirmation is stronger than the bankruptcy court's and the trustee's obligations to verify a plan's compliance with the Code."). Thus, Appellant was bound by the terms of the Plan.

We recognize that this holding is contrary to the conclusion reached in *Ridder,* with which we disagree. In *Ridder,* Great Lakes (the same creditor here) failed to object to a plan provision that denied interest on its student loan claim. After the debtor received her discharge, Great Lakes demanded that the debtor pay all postpetition interest that accrued. The bankruptcy court held that because the student loan debt was nondischargeable, Great Lakes could collect postpetition interest post-discharge from the debtor. The court stated that since Great Lakes was not entitled to postpetition interest under the Code, it had no reason to object to the plan, and thus, "[a]ny attempt by Great Lakes to object to confirmation would have been frivolous." *Ridder,* 171 B.R. at 348.

We reject the analysis in *Ridder.* It would not have been frivolous for Great Lakes to object to confirmation in *Ridder* or here. While Appellant is not entitled to collect unmatured interest from the bankruptcy estate pursuant to § 502(b)(2), the Discharge Provision precludes Appellant from collecting postpetition interest from Appellees by discharging Appellees' liability on any postpetition interest on the Claim. The Plan clearly altered Appellant's rights. The *Ridder* court

**9.** *See also Anaheim Sav. and Loan Assoc. v. Evans (In re Evans),* 30 B.R. 530, 531 (9th Cir. BAP 1983) (citing *Matter of Willey,* 24 B.R. 369 (Bankr.E.D.Mich.1982)) ("Section 1327 precludes a creditor from asserting, after confirmation, any other interest than that provided for it in the confirmed plan. The issues of adequate protection, lack of equity, and necessity for a successful rehabilitation of the chapter 13 debtor were all res judicata as of the confirmation of the plan.").

failed to address the binding affect of a confirmed chapter 13 plan when the creditor fails to timely object to the plan. Because a confirmed plan binds the creditors and debtor under § 1327(a), Appellant cannot, after the order of confirmation is final and after Appellees have fully performed on the Plan, collaterally attack the confirmation order by seeking to collect interest on the Claim in direct violation of the terms of the Plan.

We are also mindful that the Seventh Circuit has taken a contrary position with which we also disagree. In *In re Escobedo*, 28 F.3d 34 (7th Cir.1994), a chapter 13 plan that did not include allowed administrative and tax priority claims as required under § 1322(a)(2) was confirmed without objection. Nearly five years after plan confirmation and two years after the debtor's final payment, the trustee petitioned the court to either modify the plan's payment schedule to include the already allowed administrative and tax priority claims, or dismiss the plan altogether. *Id.* at 34–35. The debtor did not modify the plan and the bankruptcy court dismissed the entire plan. *Id.* at 34. The district court affirmed. *Id.* at 35. The Seventh Circuit also affirmed. The court held that because the debtor's proposed plan did not comply with the mandatory provision of § 1322(a)(2), "any supposed confirmation was nugatory and properly dismissed." *Id.* Consequently, the court held that the plan was not res judicata as to the omitted priority claims. *Id.*

■ We respectfully disagree with the holding in *Escobedo* because it is contrary to overwhelming Ninth Circuit authority and the general principle upholding the preclusive effect of final orders. While the Plan should not have been confirmed with the Discharge Provision, once confirmed, the Plan was not "nugatory" but was binding on the parties pursuant to § 1327(a) and the well-established principle that a party that fails to appeal a final order cannot collaterally attack that order. *See Celotex*, 514 U.S. at 313, 115 S.Ct. at 1501, *Stoll*, 305 U.S. at 171–72, 59 S.Ct. at 137–38, and *Gregory*, 705 F.2d at 1121. Accordingly, we hold that under § 1327(a), Appellant is bound by the terms of the Plan, and the Plan is res judicata on any

attempt to circumvent the binding effect of the Discharge Provision.

### 2. Appellant's Failure To Object To The Chapter 13 Plan Constituted An Implied Acceptance Of The Plan.

■ Additionally, a creditor's failure to object to the chapter 13 plan at the plan confirmation hearing constitutes an implied acceptance of the plan. *See Andrews v. Loheit*, 49 F.3d 1404, 1409 (9th Cir.1995) (citing *In re Gregory*, 705 F.2d at 1121; *In re Szostek*, 886 F.2d at 1413; and *In re Brown*, 108 B.R. 738, 740 (Bankr.C.D.Cal.1989)). This is because "no mechanism for plan acceptance by creditors exists in a chapter 13 case (unlike in a chapter 11 case where the creditors may vote for plan confirmation). . . ." *In re Brown*, 108 B.R. at 740. Thus, "acceptance is implied when an objection is not raised" to the chapter 13 plan. *Id.* It is not unlawful "for a creditor to stipulate or consent to be treated in a manner not technically as stringent as required in the Code." *In re Walker*, 128 B.R. at 467 (Bankr.D.Idaho 1991). Having impliedly accepted the Plan, including the Discharge Provision, Appellant is precluded from objecting to the Discharge Provision for the first time on appeal. As stated above, the bankruptcy court found that Appellant received notice of its treatment under the Plan. Appellant does not contest this finding.

### V. CONCLUSION

In summary, the bankruptcy court erred in concluding that a holder of a nondischargeable student loan debt was precluded from collecting postpetition interest on this debt if the creditor's allowed claim is paid in full pursuant to the chapter 13 plan. We are bound by the Supreme Court's holding in *Bruning* and reject the bankruptcy court's reliance on *Wasson*.

However, this error was harmless given the facts of this case. Although the Plan should not have been confirmed because it included the Discharge Provision, which was inconsistent with the Code, once confirmed, it was res judicata and binding on Appellant. Additionally, Appellant's failure to object to the Plan at the confirmation hearing consti-

tuted an implied acceptance of the Plan. By failing to appeal the Confirmation Order and having impliedly accepted the Plan, Appellant cannot now collaterally attack the Plan. Accordingly, we AFFIRM.

KLEIN, Bankruptcy Judge, concurring in part and dissenting in part:

I join the majority in the conclusions that a chapter 13 debtor is liable for postpetition interest on a nondischargeable student loan, that the debt was not "paid in full" as a matter of fact or law regardless of what the chapter 13 plan says, that the omission of reference to unmatured interest in the proof of claim was not a waiver, and that the bankruptcy court erred when it confirmed a chapter 13 plan that purported to discharge a nondischargeable debt.

I respectfully dissent from the affirmance of the bankruptcy court's injunction that prohibits appellant ("Great Lakes") from collecting the illegally discharged nondischargeable debt, including offsets from income tax refunds, and that orders Great Lakes to inform governmental agencies and credit bureaus that the loan was "paid in full" even though we are unanimous that it was not paid in full.

I believe that: (1) the chapter 13 plan provision purporting to discharge a nondischargeable debt is unenforceable; and (2) the bankruptcy court exceeded its § 105 jurisdiction to issue orders "necessary or appropriate" to carry out the Bankruptcy Code when it issued an injunction to enforce a chapter 13 plan provision that plainly violates the Bankruptcy Code.

An affirmance in this appeal would license ambushes and would function as judicial legislation substituting our judgment for that of Congress by enacting a new exception to the student loan nondischargeability provision at § 523(a)(8) and by repealing part of § 1328(a)(2). The debtors still have available the remedy of discharging the balance of the student loan by way of an adversary proceeding to establish that paying the loan balance would be an "undue hardship" under § 523(a)(8). We should not relieve them of the statutory burden to demonstrate undue hardship in order to be excused from paying the debt.

I.

While I join with the majority in concluding that interest continues to accrue postpetition on nondischargeable debt, I think it appropriate to set forth a straightforward explanation of how the seamless web of the Bankruptcy Code mandates that result.

The nub of the matter is that interest at contractual rates under nonbankruptcy law continues to accrue postpetition on all unsecured debt because, even though unmatured interest is not "allowed" by virtue of § 502(b)(9) and cannot be paid by a bankruptcy trustee, the statutory disallowance does not erase the nonbankruptcy obligation to pay interest. Rather, it is the bankruptcy discharge that eliminates the obligation. If the debt is not discharged (which can occur for a host of reasons ranging from denial of discharge to dismissal of case), then the obligation remains.

A

Under the Bankruptcy Act of 1898, it was settled that interest on a nondischargeable debt was itself nondischargeable because such interest was "an integral part of a continuing debt" that, as it matures, becomes part of the debt itself. *Bruning v. United States,* 376 U.S. 358, 360, 84 S.Ct. 906, 907–08, 11 L.Ed.2d 772 (1964) (9–0 decision).

*Bruning* involved postpetition interest on nondischargeable tax debt in a bankruptcy liquidation. The taxpayer-debtor argued that the judicially-imposed bar on payment of postpetition interest by the estate established by *Sexton v. Dreyfus,* 219 U.S. 339, 31 S.Ct. 256, 55 L.Ed. 244 (1911), applied to preclude postpetition interest on an underlying tax debt that was not discharged. As the majority explains, the dispositive distinction was the difference between the bankruptcy estate and the debtor individually. The debtor is liable, the estate is not.

I agree with the majority that *Bruning* survived the enactment of the Bankruptcy Code in 1978. Congress codified Sexton when it provided that a debt for unmatured interest is a "claim" but not an "allowed claim" and, hence, is ineligible for distribu-

tion from a chapter 7 estate. 11 U.S.C. §§ 101(5), 502(b)(2), & 726(a). An individual's discharge encompasses all debts, regardless of whether the claim is "allowed" or not, except those that are explicitly excepted from discharge. *Id.* §§ 727(b), 1141(d), 1228(a), & 1328(a). Nothing in this statutory construct is inconsistent with continued application of the *Bruning* rule to all nondischargeable debts.

### B.

One argument raised by the debtors warrants more detailed analysis than appears in the majority opinion.

The debtor, noting correctly that postpetition interest is not paid on priority tax claims in chapter 13, incorrectly concludes that *Bruning* must have been statutorily overruled by the Bankruptcy Code.

The reason that chapter 13 debtors can ignore postpetition interest on priority taxes is that the underlying tax debts are discharged in chapter 13. The overall statutory scheme in which that result was accomplished preserved the vitality of *Bruning.*

The manner in which the post–1978 statutory scheme incorporates the *Bruning* rule is best understood by using the prism of 11 U.S .C. § 1322 to examine the spectrum of chapter 13's treatment of postpetition interest on: (1) priority debts that can be discharged in chapter 13 but not in chapter 7; (2) priority debts that cannot be discharged in chapter 13; and (3) nonpriority debts that cannot be discharged in chapter 13.

### 1

Priority debts that can be discharged in chapter 13 but not in chapter 7 represent one end of the spectrum. These debts, which include priority tax debts, are paid in full under the chapter 13 plan. Although interest permitted by nonbankruptcy law accrues postpetition, such interest is not an allowed claim that is required to be paid through a plan and is discharged if (and only if) the debtor completes all payments under the plan.

A chapter 13 plan must provide for full payment in deferred cash payments of all priority claims as defined by § 507 unless a particular claimant agrees to different treatment. 11 U.S.C. § 1322(a)(2).

The deferred cash payments need only total the face amount of the claim because § 1322 does not require that the priority creditor receive the "value" of the claim. In other words, under § 1322 the sufficiency of the payments is measured by the sum of the stream of payments rather than by the net present value of the stream of payments. *Compare* 11 U.S.C. § 1129(a)(9)(C) (chapter 11), *with* 11 U.S.C. § 1322(a)(2) (chapter 13); *see* 15 LAWRENCE P. KING ET AL., COLLIER ON BANKRUPTCY ¶ TX4.05[3] (15th ed. rev.1997).

After the debtor makes all the payments required by the chapter 13 plan, the debtor receives a so-called "superdischarge" that eliminates all chapter 7 nondischargeable debt except alimony and support, student loans, drunk driving liabilities, and criminal fines and restitution. 11 U.S.C. § 1328(a).

A conundrum arises at this juncture. If, as must be the case, the § 507 priority debt has already been paid in full under the plan, then what is left for the superdischarge to accomplish? The answer is that the superdischarge eliminates any residual liability with respect to the debt, including postpetition interest that accrued under nonbankruptcy law.

All of these consequences, however, are conditional upon actual completion of payments under the plan. If all payments required by the chapter 13 plan are not made, then the best the debtor can do is to obtain a § 1328(c) so-called "hardship discharge" that does not discharge any chapter 7 nondischargeable debt. 11 U.S.C. § 1328(c).

If the debtor receives only the § 1328(c) hardship discharge (or if the case is dismissed or converted to chapter 7), then the priority debt that is nondischargeable in chapter 7 has the same status as it would have had under chapter 7. Any portion of the debt as of the date of filing that remains unpaid is not discharged, and, under the *Bruning* doctrine, interest accruing postpetition is not discharged.

Thus, whether a debtor is discharged of any residual liability for postpetition interest

on a § 507 priority debt that is nondischargeable in chapter 7 but that can be discharged in chapter 13 depends upon whether the plan payments are actually completed. Since the discharge status of accruing postpetition interest depends upon subsequent events, whether the debtor will actually turn out to be liable for postpetition interest cannot be known in advance.

This category of debts includes priority tax debt because the definition of priority tax debt under § 507(a)(8) [10] mirrors the tax nondischargeability provision at § 523(a)(1). And tax debts that are nondischargeable in chapter 7 under § 523(a)(1) are discharged by the § 1328(a) superdischarge but not by the § 1328(c) hardship discharge.

This leads to the conclusion that the debtors' assertion that postpetition interest is not paid on priority tax debts is based on a flawed view of the law. Rather, interest prescribed by nonbankruptcy law does accrue postpetition on priority tax debts, but such interest need not be paid under a chapter 13 plan, and it is discharged if, and only if, payments under the plan are completed so that a § 1328(a) superdischarge issues. If plan payments are not completed, then postpetition interest is not discharged by the § 1328(c) hardship discharge because the tax debt is nondischargeable under § 523(a)(1).

2

Priority debts that cannot be discharged in chapter 13, including alimony and support debts, occupy the middle of the spectrum.

As § 507 priority debts, they must be paid the full amount of the claims as of the time of bankruptcy in deferred cash payments. 11 U.S.C. § 1322(a). And they are nondischargeable in chapter 13 to the same extent as in chapter 7 because they are explicit exceptions to the chapter 13 superdischarge. 11 U.S.C. § 1328(a).

Interest provided by nonbankruptcy law continues to accrue postpetition on these priority debts (as it does on all debts). Since this category of priority debts cannot be discharged in chapter 13, any interest mandated by nonbankruptcy law is similarly nondischargeable.

The debts that qualify for such treatment are alimony and support debts that are owed under nonbankruptcy law directly to a spouse, former spouse, or child for alimony, maintenance, or support and that have not been assigned to another entity. Such debts became priority claims under § 507(a)(7) pursuant to a 1994 amendment to the Bankruptcy Code.[11]

3

The third category consists of debts that are not § 507 priority debts but that are nondischargeable in chapter 13.

Student loans are in this category, as are alimony and support debts that have been assigned to governmental entities, drunk driving tort debts, and criminal restitution and fines. 11 U.S.C. §§ 523(a)(5), (8)–(9) & § 1328(a).

The absence of priority status means that such debts need not be paid in full in deferred cash payments under the plan. Nevertheless, they are nondischargeable under all forms of chapter 13 discharges.

It follows from the preceding analysis that, to the extent that any interest is permitted by nonbankruptcy law, interest accrues postpetition on nondischargeable debts and is similarly nondischargeable under the *Bruning* doctrine.

---

**10.** The tax priority was designated as § 507(a)(7) before the Bankruptcy Reform Act of 1994 created an additional priority to be paid ahead of tax debt.

**11.** A new seventh priority was added by the Bankruptcy Reform Act of 1994:

(7) Seventh, allowed claims for debts to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that such debt—(A) is assigned to another entity, voluntarily, by operation of law, or otherwise; or (B) includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance or support.

11 U.S.C. § 507(a)(7) (1994).

Thus, the fact that postpetition interest on priority tax debt is discharged if the debtor completes all payments under the chapter 13 plan is fully consistent with the continuing vitality of *Bruning* within the chapter 13 scheme.

### C

When the bankruptcy court found that the statutory disallowance of claims for unmatured interest that is mandated by § 502(b)(2) exonerates the debtors from postpetition interest, the trial court confused the concept of claim allowance with the concept of liability for the underlying debt and, further, confused disallowance of a claim with discharge of a debt.

### 1

The term "claim" is defined in the broadest possible manner to encompass all rights to payment, including rights that are contingent, unmatured, disputed, or derived from rights to an equitable remedy. 11 U.S.C. § 101(5). The term "debt" is defined to mean "liability on a claim." 11 U.S.C. § 101(12). And, by extension, debt means liability both on an allowed claim and on a claim that is not allowed.

### a

Whether payment on a claim will be made in a bankruptcy case often depends upon whether the claim is "allowed." In chapter 7 liquidations, disallowance precludes payment from the estate because trustees are not authorized to make distributions on claims that are not allowed. 11 U.S.C. § 726(a)(2)–(5). In chapters 11, 12, and 13, holders of allowed claims have more leverage than mere holders of claims because the respective best interests tests are keyed to allowed claims. 11 U.S.C. §§ 1129(a)(7)(B), 1225(a)(4)–(5) & 1325(a)(4)–(5).

### b

The effect of a claim being "disallowed" is ambiguous. Disallowance does not necessarily mean that the claim is invalid under nonbankruptcy law.

To be sure, the form of disallowance that usually is the subject of contested litigation in bankruptcy court is that the claim is unenforceable against the debtor or estate under nonbankruptcy law. 11 U.S.C. § 502(b)(1).

But many claims that are enforceable under nonbankruptcy law are disallowed under § 502, which reflects an amalgam of policy determinations by Congress that are embodied in ten enumerated categories. 11 U.S.C. §§ 502(b)(2)–(9), (d) & (e).

Unmatured interest is disallowed. 11 U.S.C. § 502(b)(2). So are lease termination damages and employment contract termination damages above specified caps. 11 U.S.C. § 502(b)(6)–(7).

Every claim of an entity that is a transferee of an avoidable transfer, such as a preference, or that holds property that should be turned over to the trustee is automatically disallowed until the property is turned over or the liability is paid in full. 11 U.S.C. § 502(d); *In re Sierra–Cal*, 210 B.R. 168 (Bankr.E.D.Cal.1997).

Unless it is also unenforceable under nonbankruptcy law, the disallowed claim retains its status as a "claim," even though it cannot be an "allowed claim." The consequence of not being an allowed claim varies from chapter to chapter of the Bankruptcy Code.

Claims that are not allowed are ineligible to participate in distributions from a chapter 7 liquidation estate.[12] In contrast, disallowed claims are not automatically disqualified from payment in chapter 11, 12, or 13 plans that are proposed in good faith. Every such plan must pass all applicable confirmation standards, such as the "best-interests" tests that are keyed to whether holders of "allowed claims" are receiving at least as much as they would receive in a chapter 7 liquidation. 11 U.S.C. §§ 1129(a)(7)(A)(ii), 1225(a)(4), & 1325(a)(4).

Nothing in chapter 13 absolutely forbids payment of a disallowed claim. The term "allowed claim" does not appear in § 1322, which specifies what provisions may be in-

---

12. If the estate has sufficient assets, interest is paid on all allowed claims, regardless of whether interest otherwise accrues, but such interest is based on a federal statutory right (not nonbank-ruptcy law) and is only at the legal rate from the date of the filing of the petition. 11 U.S.C. § 726(a)(5).

cluded in plans regarding payment of claims, even though the term "claim" appears twenty times in that section. That this is no mere oversight by Congress is evident from the protection it expressly gave to the holder of an allowed unsecured claim in the form of the power to object to confirmation, thereby forcing either full payment of the objecting allowed unsecured claim or the use of all projected disposable income for plan payments. 11 U.S.C. § 1325(b)(1).

There is at least one circumstance in which unmatured interest is plainly permitted to be paid under a chapter 13 plan. When the last payment on a secured or unsecured obligation is due after the date of the final payment under the chapter 13 plan, the plan may provide for curing any default in that obligation within a reasonable time and maintaining payments while the case is pending. 11 U.S.C. § 1322(b)(5). If the obligation includes interest, then the ability to cure a default and maintain payments necessarily permits payment of interest that was unmatured as of the time of filing.

### 2

The real reason that creditors are not ordinarily paid unmatured interest is that the discharge eliminates the interest obligation. The disallowance of the claim, when it prevents payment, merely adds insult to the injury. Each chapter has its own discharge provisions, the terms of which must be consulted to determine whether the specific debt is discharged. 11 U.S.C. §§ 727(b), 1141(d), 1228(a)–(c), & 1328(a)–(c).

The debtors in this instance received the chapter 13 "superdischarge" that is available only if all the plan payments are actually made. They were discharged from:

> all debts provided for by the plan or *disallowed under section 502* of this title, *except* any debt—(1) provided for under section 1322(b)(5) of this title; (2) *of the kind specified in paragraph (5), (8),* or *(9) of section 523(a)* of this title; or (3) for restitution, or a criminal fine, included in a

sentence on the debtor's conviction of a crime.

11 U.S.C. § 1328(a) (emphasis supplied).[13]

This discharge under § 1328(a) does not discharge postpetition interest on the student loan debt because, although disallowed under § 502 as unmatured interest, it is part of an obligation of the kind specified in § 523(a)(8) that is excepted from discharge.

Hence, postpetition interest on a nondischargeable student loan debt in chapter 13 is similarly nondischargeable.

### D

The trial court's conclusion that the claim was "paid in full" under the plan because Great Lakes received all of the principal and prepetition interest that was owed begs the question of whether postpetition interest is a claim.

The trial court was following the only reported decision that supports the debtors' position, *In re Wasson,* 152 B.R. 639 (Bankr. D.N.M.1993), which contains dictum that the Bruning rule does not apply to student loan debts that are fully paid in the chapter 13 plan.

I agree with the majority that it was error to rely on the *Wasson* dictum, which confuses the disallowance of unmatured interest and the accrual of interest on a nondischargeable debt.

And I see an even more fundamental flaw in *Wasson* that emerges when one parses § 1328(a). *Wasson* analogizes student loans to priority taxes and reasons that because postpetition interest on priority tax debts is discharged in chapter 13 "it logically follows that *Bruning* should not apply to student loan debts which are fully paid out of the estate." *Wasson,* 152 B.R. at 642. The fallacy in this lies in the false premise that both types of debts are dischargeable. Priority tax debts are discharged under § 1328(a) but student loan debts are not.[14]

---

13. If they had not completed payments under the plan, the court could have authorized the so-called "hardship discharge" that mirrors the chapter 7 discharge. 11 U.S.C. § 1328(c).

14. Ironically, *Wasson* may have been correctly decided for the wrong reasons. The narrow holding overruled an objection to chapter 13 plan confirmation by a student loan creditor who complained of not being paid statutorily-disal-

In 1978, the proponents of discharging student loans fought and lost the battle to block what became § 523(a)(8).[15] In short, Congress has settled the issue in a manner that does not leave room for judicial legislation.

## II

I respectfully dissent from the majority's conclusion that the injunction issued by the bankruptcy court, even though predicated upon a substantive error about which we are unanimous, should stand. I would reverse on several theories.

In my view, the majority's analysis about the binding effect of the plan under § 1327(a) confuses the concept of a binding plan provision with the concept of a discharge and proves too much. I do not think that § 1327(a) can be used to discharge a debt that is expressly nondischargeable under § 1328(a)(2). Nor do I agree that Great Lakes waived any rights in the circumstances of the case in which the procedural posture (both below and here) requires the presumption that repaying the $6,096 would merely be inconvenient and not an "undue hardship" under § 523(a)(8).

Moreover, the majority incorrectly applies the doctrine of res judicata to preclude a direct attack on the offending order and, in any event, does not recognize that the order confirming the chapter 13 plan is in all pertinent respects either void or too defective to support the issuance of a § 105 injunction.

## A

The majority's res judicata analysis is premised on the mistaken assumption that Great Lakes was making a collateral attack on the order confirming the chapter 13 plan when it defended against the debtors' motion for an injunction. Great Lakes was making a *direct* attack.

The distinction between collateral attack and direct attack matters because res judicata bars a collateral attack on a final judgment but does not bar a direct attack on a final judgment. *Watts v. Pinckney*, 752 F.2d 406, 410 (9th Cir.1985). I construe Great Lakes' defense to have been a direct attack premised on lack of jurisdiction as to which res judicata is not a bar.

### 1

Great Lakes filed an opposition to the debtors' motion for an injunction enforcing the discharge in which it took the position that the only possible way for the debt to be discharged would be to prosecute an adversary proceeding for a determination that paying the debt would constitute an "undue hardship" as prescribed by § 523(a)(8)(B).

In a nutshell, Great Lakes was contending that the order confirming the chapter 13 plan could not possibly have functioned to discharge the debt for the interest that matured postpetition because the Bankruptcy Code prohibits such a result and mandates that the sole method of discharging a student loan be under the narrow conditions prescribed at § 523(a)(8).

In a functional sense, Great Lakes' position was that the order confirming the chapter 13 plan was void to the extent it ordered something that the court did not have the jurisdiction to do. If Great Lakes' opposition had been elegant, it would have included a countermotion for relief from judgment or

---

lowed postpetition interest ahead of other allowed unsecured claims. If one accepts the debatable proposition that separately classifying and paying in full a nonpriority, nondischargeable debt before paying other allowed unsecured claims is not an unfair discrimination, then the refusal in *Wasson* to permit disallowed claims for postpetition interest to be paid ahead of allowed unsecured claims is an unexceptionable application of the bankruptcy distribution scheme described herein.

**15.** The House committee's report on the 1978 Bankruptcy Code devoted thirty-one pages to urging that student loans should be discharged.

H.R.Rep. No. 95–595, at 132–62 (1977), *reprinted in* 1978 U.S.C.C.A.N. 6093–6123.

The House committee made two basic arguments against nondischargeability. First, "an exception to discharge is contrary to the two most important principles of the bankruptcy laws: a fresh start for the debtor, and equality of treatment for all debts and creditors." Second, "it is inappropriate to view the [student loan] program as social legislation when granting the loans, but strictly as business when attempting to collect." *Id.* at 133–34, 1978 U.S.C.C.A.N. 6094–95.

The House committee position did not prevail in the Bankruptcy Code as finally enacted.

order pursuant to Federal Rule of Civil Procedure 60(b)(4), as incorporated by Federal Rule of Bankruptcy Procedure 9024. Nevertheless, I believe that the court should have construed the opposition as a Rule 60(b)(4) motion. *See* Fed.R.Bankr.P. 1001.

In short, Great Lakes was contending that the order ought to be either adjusted to expunge the offending provision or declared to be void in that respect and unworthy of enforcement.

This was a *direct* attack on the judgment, not a collateral attack:

> A direct attack on a judicial proceeding is an attempt to correct it, or to void it, in some manner provided by law to accomplish that object. It is an attack ... by appropriate proceedings between the parties to it seeking, for sufficient cause alleged, to have it annulled, reversed, vacated, or declared void.

*Watts,* 752 F.2d at 410, *quoting* 1B J. MOORE, MOORE'S FEDERAL PRACTICE ¶ 0.407, at 282 n. 1 (1984) (ellipsis in original).

### 2

The primary cases relied upon by the majority in the res judicata analysis confirm that we are here confronted with a *direct* attack and not a collateral attack.

*Stoll* was plainly a collateral attack. In that case under the former Bankruptcy Act, the federal district court sitting in bankruptcy confirmed a plan in a reorganization under Bankruptcy Act § 77B that purported to cancel bond guarantees that had been made to one Gottlieb by third parties. *Stoll v. Gottlieb,* 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938).

Gottlieb, who had not participated in the confirmation process, filed a motion in the district court to vacate or modify the order of confirmation on the ground of lack of jurisdiction, which motion was denied and not appealed. This was a *direct* attack that entailed actual litigation that Gottlieb thereafter allowed to become final by not taking an appeal.

Instead of pursuing his direct attack by way of appeal, Gottlieb launched a collateral attack by filing a state-court action on the bond guarantees. The collateral attack wended its way through the state courts and ultimately reached the U.S. Supreme Court on certiorari to the state supreme court. The U.S. Supreme Court held that the district court's adverse ruling in the *direct* attack had become final when it was not appealed and that the state-court action was an impermissible collateral attack.

The teaching of *Stoll* is that when a jurisdictional question is actually litigated and decided, the determination is binding and functions as res judicata to prevent collateral attack in litigation in other forums. The decision says nothing about what would have happened if Gottlieb had pursued his direct attack. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 12 cmt. c (1982) (discussing *Stoll*); 11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE: CIVIL 2D § 2862 (1995).

The key corollary of *Stoll* is that the res judicata effect of a tribunal's determination of its own competency does not preclude all forms of review of that determination, i.e. direct attack. As explained in the Restatement's discussion of *Stoll*, "there is virtually always available a procedure by which to obtain review of the original tribunal's determination of the issue, either by appeal or by injunction or extraordinary writ." RESTATEMENT (SECOND) OF JUDGMENTS § 12 cmt. c.

In contrast, Great Lakes did not contest confirmation, did not litigate the question of jurisdiction in a motion for subsequent relief and then decline to appeal from the adverse ruling, and did not initiate collateral attack in any other court. When the dispute did make its way to court, it was in the very same bankruptcy court that had confirmed the offending plan. And the proceeding was very different—an action by the debtors to obtain an injunction under § 105, a necessary feature of which was the obligation by the court to assure that there was jurisdiction to have entered the original order in the first place. We are now dealing with a timely appeal from that injunction. Thus, Great Lakes is effectively in the same posture as Gottlieb would have been if Gottlieb had timely appealed from the adverse ruling on his motion.

*Celotex v. Edwards,* 514 U.S. 300, 313, 115 S.Ct. 1493, 1501, 131 L.Ed.2d 403 (1995), has essentially the same message as *Stoll* about the necessity of orderly federal review by way of *direct* attack beginning with the court that issued the initial judgment. In that case, a bankruptcy court in the Eleventh Circuit issued a § 105 injunction forbidding efforts to collect on appeal bonds obtained by the debtor before bankruptcy. A district court in the Fifth Circuit ruled that the injunction did not preclude the particular action before it. The Supreme Court held that the § 105 injunction was binding unless and until it was reversed or modified by orderly processes within the Eleventh Circuit and that a collateral attack in the Fifth Circuit would not be permitted. Although the Supreme Court discusses the need to have appealed the bankruptcy court's injunction, a key point is that there remained available a perfectly good avenue of *direct* attack by way of asking the bankruptcy court that issued the injunction to modify it.

In contrast, Great Lakes litigated the § 105 injunction in the same bankruptcy court that had confirmed the offending chapter 13 plan and is now, before us, prosecuting a timely appeal from the injunction. The bankruptcy court had an obligation to own up to its original error and decline to compound its error by issuing an injunction.

The majority also relies on the Fifth Circuit's decision in *Republic Supply Co. v. Shoaf,* 815 F.2d 1046, 1049–50 (5th Cir.1987), which invoked res judicata to bar a nonobjecting creditor from suing a third-party guarantor who was to be released pursuant to the terms of a confirmed plan. Not only does *Shoaf* involve a collateral attack on the same model as *Stoll* and *Celotex* instead of a *direct* attack, but the Fifth Circuit has a line of cases that significantly circumscribe *Shoaf. Internal Revenue Serv. v. Taylor (In re Taylor),* 132 F.3d 256 (5th Cir.1998); *Boyle Mortgage Co. v. Cook (In re Cook),* No. 93–7459 (5th Cir. June 2, 1994) (unpublished); [16] *Sun Finance Co. v. Howard (In re Howard),* 972 F.2d 639, 641 (5th Cir.1992) (chapter 13 plan confirmation cannot compromise secured debt, notwithstanding res judicata);

*Simmons v. Savell (In re Simmons),* 765 F.2d 547 (5th Cir.1985).

It is also significant that *Stoll, Celotex,* and *Shoaf* all involved orders that were not plainly in violation of the applicable bankruptcy statute. In other words, none of them presented the question of a void judgment.

3

The law in the Ninth Circuit and elsewhere is that res judicata is inapplicable to *direct* attacks on judgments. Notwithstanding that an order is final and was not appealed, a litigant may make a *direct* attack under Rule 60(b) upon the judgment before that court that rendered the judgment. *Watts,* 752 F.2d at 410; *Jordon v. Gilligan,* 500 F.2d 701, 710 (6th Cir.1974), *cert. denied,* 421 U.S. 991, 95 S.Ct. 1996, 44 L.Ed.2d 481 (1975).

Great Lakes was making a *direct* attack on the order confirming the chapter 13 plan before the very court that rendered the order.

The nature of the *direct* attack was that there was a total want of jurisdiction due to the strict requirements of § 523(a)(8) and § 1328(a)(2).

Congress has prescribed strict requirements for discharging a student loan under § 523(a)(8) which require that it either be of a certain age (§ 523(a)(8)(A)) or be an "undue hardship" to repay (§ 523(a)(8)(B)) and has forbidden discharge under § 1328 (and §§ 1141(d)(2) and 1228(a)). Any disagreement about the discharge status must be resolved by way of adversary proceeding. Hence, there is a total want of jurisdiction to discharge a student loan debt by other means. *See Watts,* 752 F.2d at 409.

Since there is no other way to discharge a student loan debt, the order confirming the chapter 13 plan was void insofar as it purported to require the discharge of a student loan without compliance with the statutory requirements.

The analysis is identical to what would occur in other situations to which the majority's logic would prevent review. If the confirmed chapter 13 plan purported to discharge a fully-secured claim after a partial

---

**16.** "Unpublished opinions issued before January 1, 1996, are precedent." 5th Cir.R. 47.5.3.

payment or if it purported to require the imprisonment of a creditor, nobody would think that the order was anything but void regardless of whether there was a timely appeal. Any such provision is too far removed from what Congress has permitted to be accomplished by way of the Bankruptcy Code. *Watts,* 752 F.2d at 409; 11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2862 (1995). So it is in this instance.

While it may be difficult to draw the line between a merely erroneous judgment and a void judgment, in my view, the bankruptcy court crossed the line from mere jurisdictional error to total lack of jurisdiction.

The Seventh Circuit recently reached the same result in a similar situation that we should follow. *In re Escobedo,* 28 F.3d 34 (7th Cir.1994). The bankruptcy court confirmed an unopposed chapter 13 plan that did not provide for full payment of priority claims as required by § 1322(a)(5). Five years after confirmation and two years after the debtor's final plan payment, the trustee moved (in a *direct* attack that the majority misconstrues as a collateral attack) to require the debtor to modify the plan so as to comply with § 1322(a)(5) or to have the confirmation order vacated and the plan dismissed. When the debtor did not modify the plan, the bankruptcy court ordered dismissal.

In affirming the *Escobedo* dismissal, the Seventh Circuit held that the failure of the plan to comply with a mandatory statutory requirement for chapter 13 plans rendered "any supposed confirmation nugatory [i.e. void] and properly dismissed." *Escobedo,* 28 F.3d at 35. The res judicata doctrine was not applicable to the omitted priority claims. Although the analysis in *Escobedo* is somewhat sparse, its conclusion is squarely on target.

When Great Lakes defended on the basis that § 1328(a)(2) prohibited the discharge of a student loan debt without compliance with the "undue hardship" provision of § 523(a)(8), the bankruptcy court was obliged to exercise its authority under Rule 60(b)(4) to vacate the order confirming the chapter 13 plan to the extent it purports to discharge a nondischargeable debt. "A void judgment is a legal nullity and a court considering a motion to vacate has no discretion in determining whether it should be set aside." *Watts,* 752 F.2d at 410, *quoting Jordon,* 500 F.2d at 704; *cf. Graziadei v. Graziadei (In re Graziadei),* 32 F.3d 1408, 1410 (9th Cir. 1994); *Escobedo,* 28 F.3d at 35.

This warrants reversal.

## B

Even if one discounts the distinction between direct and collateral attacks and does not view the offending portion of the order confirming the plan as void, we should reverse on the basis that the injunction in question exceeded the court's jurisdiction.

The narrow question before us in this appeal is whether we should affirm an injunction. Specifically, this is a timely appeal from an injunction that forces Great Lakes to refrain from collection activity, including attempts to offset income tax refunds, that requires it to inform governmental agencies and credit bureaus that the debt has been "paid in full" (falsely it turns out, because we are unanimous that the debt was not paid in full), and that requires it to pay the debtors' attorney's fees. In this context, the order confirming the chapter 13 plan is mere background.

### 1

We must be clear that the injunction that we are reviewing is not the discharge injunction provided by § 524(a)(2).

The discharge injunction follows only from the statutory discharges provided by the Bankruptcy Code—the § 1328(a) discharge in this instance. The § 1328(a) discharge unambiguously excludes student loans that are nondischargeable under § 523(a)(8). No plan provision ever discharges anything. And no plan provision, enforceable or not, can change the terms of the § 1328(a) discharge. The § 524 discharge injunction only applies to discharges that are authorized by the Bankruptcy Code.

Thus, the injunction must have been issued under the court's general equitable powers recognized at § 105.

## 2

The injunction was issued under § 105, which permits a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). This reflects the understanding that bankruptcy courts are courts of equity that "have broad authority to modify creditor-debtor relationships." *United States v. Energy Resources Co.*, 495 U.S. 545, 549, 110 S.Ct. 2139, 2142, 109 L.Ed.2d 580 (1990).

But § 105 has bounds. As a leading treatise notes, "it should be universally recognized that the power granted to the bankruptcy courts under section 105 is not boundless and should not be employed as a panacea for all ills confronted in the bankruptcy case." 1 Lawrence P. King et al., Collier on Bankruptcy ¶ 105.01[2], at 105–6 – 105–7 (15th ed. rev.1997). These equitable powers can only be exercised within the confines of the Bankruptcy Code. *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206, 108 S.Ct. 963, 968, 99 L.Ed.2d 169 (1988). Bankruptcy courts cannot "create substantive rights that are otherwise unavailable," such as creating additional exceptions to student loan nondischargeability provisions, and they do not have a "roving commission to do equity." *United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir.1986).

Applying the § 105 "necessary or appropriate" standard to the injunction directed against Great Lakes, it is plain that it is based on an impermissible plan provision. Enforcing a provision that is prohibited by the Bankruptcy Code is neither necessary nor appropriate to carry out the provisions of the Bankruptcy Code.

In consequence, the offending plan provision (if not outright void) remains on the books but, being ineligible for a § 105 injunction, has no way of being enforced. It should be regarded as merely sitting there, to be ignored as unenforceable, pathetic in its pretension.

The § 105 injunction should be reversed as beyond the authority of the bankruptcy court.

## C

The majority holds that the "binding" clause § 1327(a) authorizes chapter 13 plans to include provisions that violate the Bankruptcy Code, which provisions become enforceable if a creditor does not object to the plan or appeal the confirmation order. It reasons, first, that res judicata requires that failure to object or appeal is a waiver of the right to collaterally attack the confirmed plan after confirmation and, second, that failure to object constitutes implied acceptance of the plan.

I do not agree, as a matter of statutory construction, that § 1327(a) trumps the more specific command of § 1328(a)(2).

Moreover, although I have already explained why this appeal involves a direct attack to which res judicata does not apply, there are also exceptions to res judicata that apply in the event it is regarded as a collateral attack. Similarly, implied acceptance is a troublesome and largely-discredited doctrine that does not apply to this case.

## 1

The analysis requires a brief review of some facts from the record and some observations about the standard of review.

### a

Great Lakes was the main target and the primary creditor in this chapter 13 case. The plan, which purported to pay 100 percent of allowed unsecured claims, called for payment of $515 per month. The payments were completed and the discharge issued when $28,840 had been paid, of which $26,015 went to Great Lakes, with a substantial portion of the $2,825 balance being attributable to fees. And there was a student loan owed by Mrs. Pardee to First Interstate Bank, with respect to which the plan provision was: "This obligation shall be paid outside of the plan and directly to First Interstate Bank."

The offending plan provision reads: "[Great Lakes] shall receive the total amount of $25,235.00 for its claim and any remaining unpaid amounts, if any, including any claims for interest, shall be discharged by the plan."

There has been no explanation of why Great Lakes was paid the higher amount of

its proof of claim rather than the sum certain specified in the plan. (If the last six words of the sentence are "binding," then why is not the sum certain stated in the same sentence also binding?)

The debtors do not contend that it would be a undue hardship to pay Great Lakes the $6,097 in interest that had accrued on unpaid principal after the filing of the chapter 13 case. Hence, the student loan debt does not qualify for the statutory undue hardship exception to nondischargeability under § 523(a)(8)(B). Accordingly, we must presume that it is merely inconvenient for the debtors to repay the student loan.

The record does not unambiguously establish that Great Lakes had actual notice that the plan would terminate the right of Great Lakes to postpetition interest on the nondischargeable debt.

b

The majority is applying the wrong standard of review. In this appeal, the correct standard of review of the findings by the bankruptcy court is one of "special scrutiny" rather than the more deferential clearly erroneous standard that ordinarily applies.

Specifically, the findings of fact and conclusions of law that appear in the order (in violation of the separate order doctrine of Rule 9021) were prepared by debtor's counsel as prevailing party and signed by the court without making any changes. Order, entered on January 30, 1997, at 2–5.

In the Ninth Circuit, a bankruptcy court's findings, if merely adopted in full from the findings of fact by the prevailing party, are subject to "special scrutiny." *Alvernaz Farms, Inc. v. Bank of California (In re T.H. Richards Processing Co.)*, 910 F.2d 639, 643 n. 2 (9th Cir.1990); *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1385 n. 3 (9th Cir.1984).

This matters because the majority gives deference to the bankruptcy court's conclusion that Great Lakes had actual notice of the offending exotic provision in the chapter 13 plan, observing in a footnote that the "bankruptcy court found that Appellant re-

ceived notice of its treatment under the Plan." This is a reference to conclusion of law no. 2. Order, entered on January 30, 1997, at 3. The only finding of fact that arguably supports this conclusion of law is the inference to be drawn from finding of fact no. 3 that Great Lakes filed a proof of claim. But this does not establish that the debtor sent Great Lakes a copy of the plan or merely, as permitted by Rule 3015(d), a summary that did not necessarily include the exotic provision.

Since we must review the facts under a "special scrutiny" standard, we should be skeptical.

2

The correct construction of § 1327(a) "binding" clause with the § 1328(a)(2) restriction on discharge presents the question that was addressed by the concurrence in *Fireman's Fund Mortgage Corp. v. Hobdy (In re Hobdy)*, 130 B.R. 318, 321 (9th Cir. BAP 1991) (Perris, J. concurring). I agree with, and adopt, that analysis.

a

Familiar principles of statutory construction require that a general rule give way to a more specific rule that is inconsistent with the general rule. *E.g., Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 524, 109 S.Ct. 1981, 1992, 104 L.Ed.2d 557 (1989) ("A general statutory rule usually does not govern unless there is no more specific rule"); *Hobdy*, 130 B.R. at 321–22.

Here, the general rule is § 1327(a) that "binds" the debtors and all creditors to the plan "whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). The first more specific rule is § 1328(a)(2), which excludes from discharge those debts that are nondischargeable under § 523(a)(8). The second more specific rule is § 523(a)(8)(B) requiring the demonstration of "undue hardship" in order to have a student loan discharged, which demonstration must be made by way of adversary proceeding.[17] *Compare* 11 U.S.C. § 523(a)(8)(B), *with* Fed.R.Bankr.P. 7001(6).

---

17. Congress has prescribed two circumstances in

which a student loan is discharged. It is dis-

Another familiar principle requires that statutes be construed to be harmonious, giving effect to the language of each section. *E.g., Hobdy*, 130 B.R. at 321–22; *In re Parker*, 148 B.R. 604, 605–06 (Bankr.D.Idaho 1992) (Hagan, J.).

Both of these principles compel the conclusion that the majority is not correct when it applies the "binding" provision of § 1327(a) to expunge § 523(a)(8)(B) and § 1328(a)(2) from the Bankruptcy Code.

b

Moreover, the majority's sweeping deference to § 1327(a) does not admit of a limiting principle. If § 1327(a) can be used to eliminate § 1328(a)(2) from the Bankruptcy Code and can be used to add an additional exception to § 523(a)(8), then any other Bankruptcy Code provision could be similarly amended.

Under the majority's logic, fully secured claims could be deemed "fully paid" upon payment of less than the full amount of the claims. Logically extended, creditors could be ordered imprisoned or even executed.

The correct limiting principle is suggested by § 1322, which specifies the terms that may permissibly be in chapter 13 plans. The only potential authority in § 1322 for a provision that specifically varies the terms of § 1328(a)(2) or § 523(a)(8) is § 1322(b)(10), which permits a plan to include any "appropriate provision not inconsistent with this title." 11 U.S.C. § 1322(b)(10). Thus, the limiting principle is that the plan may not contain a provision that is inconsistent with the Bankruptcy Code. *Cf. Simmons*, 765 F.2d at 557–59.

The conspicuous absence from § 1328(a) of the phrase "except as otherwise provided in the plan" connotes inability to vary the terms of the discharge. In contrast, this preambular phrase, which is a standard phrase in the Bankruptcy Code denoting latitude to vary the statute, is used in § 1141(d)(1) to give the plan proponent some limited control over discharge matters in chapter 11 cases. 11 U.S.C. § 1141(d)(1). And it is also signifi-

cant that such latitude is not conferred in chapter 11 for nondischargeable debts of individual debtors. 11 U.S.C. § 1141(d)(2).

The chapter 13 plan provision purporting to discharge a debt that is nondischargeable under § 1328(a)(2) is plainly inconsistent with § 1328(a)(2) and, hence, is not permitted to be included in the plan.

3

Even if this were to be regarded as a collateral attack to which principles of res judicata apply, the majority leaves unexamined a number of exceptions to rigid finality that are suggested by the record.

a

There are numerous exceptions that permit relief from judgments in various circumstances. *See* RESTATEMENT (SECOND) OF JUDGMENTS §§ 64–82 (1982) ("Restatement").

A judgment does not preclude subsequent litigation if the subject matter "was so plainly beyond the court's jurisdiction that its entertaining the action was a manifest abuse of authority." RESTATEMENT (SECOND) OF JUDGMENTS § 12(1) (1982). I regard this as such a case. To the extent that *Escobedo* could be construed as a collateral attack, it is this exception that justifies the Seventh Circuit's result. *Escobedo*, 28 F.3d at 34–35.

Inadequate notice to the affected party can defeat finality. RESTATEMENT § 1. Applying the "special scrutiny" standard of review, it is not apparent that Great Lakes had adequate notice that the student loan debt would be discharged without payment of postpetition interest and without a demonstration of "undue hardship" in an adversary proceeding. Indeed, similar defects necessitated a reversal by the BAP in *Hobdy*, 130 B.R. 318.

A person who knows about an action but perceives a lack of jurisdiction "is given a right to ignore the proceeding at his own risk but to suffer no detriment if his assessment proves correct." RESTATEMENT § 65 & cmt. b. The rationale for vacating the judgment is that:

no public purpose is served by protecting the judgment. By hypothesis the proceed-

---

charged if it is too old, 11 U.S.C. § 523(a)(8)(A), or if repaying the loan would be an "undue hardship." The age of loan exception did not apply to the facts of this case when it was filed;

and the passage of time associated with this case is either not counted or is the basis for an estoppel.

ing was infected by fundamental error, usually attributable to the plaintiff's own acts or omissions. Since the judgment was by default no significant investment of judicial effort was made. Thus, the judgment is supported by none of the considerations supporting preclusion and properly may be treated as wholly abortive.

*Id.*

Relief from the confirmation order would be permitted if confirmation resulted from a substantial mistake by the court. RESTATEMENT § 68(3) & cmt. c ("If the mistake is induced by the plaintiff, the case for relief is stronger, and so also if the mistake is by the court itself"). Confirming a plan that contains a provision that is prohibited by the Bankruptcy Code is a substantial mistake by the court, induced by the debtors.

### b

The main limitation on affording relief from orders confirming plans is the same equitable analysis that generally governs—lack of diligence, untimeliness, and inequitable disturbance of reliance interest of others. RESTATEMENT § 74.

The key issue to overcome in the context of a confirmed plan is the reliance interest of others. A new equilibrium and new legal relations are established in reliance on confirmation. Disturbing them adversely often will be inequitable and, hence, impermissible.

The court can, however, fashion limited or conditional relief so long as legitimate reliance interests are protected. RESTATEMENT § 74(3).

In this instance, Great Lakes is essentially the only creditor. Any reliance interest of others is remote. What is at stake is whether the debtors still owe Great Lakes $6,096. Other creditors subject to the plan (if any) are unaffected because they have already been paid in full. Thus, no inequitable violence would be done to reliance interests of others by reversing the § 105 injunction.

Moreover, Great Lakes satisfies the requirement of diligence. It has never manifested an intention to treat the offending provision as valid. Assuming that it had notice of the provision, it had every reason to expect that such a provision would never be given effect. In addition to violating the Bankruptcy Code, it was contrary to all judicial decisions except *Wasson*. The chapter 13 trustee had a statutory duty to participate in the confirmation, opining on suitability for confirmation. 11 U.S.C. § 1302(b)(2)(B). And, regardless of whether a creditor or the trustee objects, the bankruptcy court had an independent duty to confirm only those plans that meet confirmation standards. *Cf. Everett v. Perez (In re Perez)*, 30 F.3d 1209, 1213 (9th Cir.1994) (ch. 11—"trustees have a responsibility to raise certain issues, and the court itself must pass on those issues, whether or not they're specifically put in dispute."). Great Lakes was entitled to expect the chapter 13 trustee and the court to do their jobs.

Moreover, none of the considerations supporting preclusion support the order confirming this chapter 13 plan. No public purpose is served by protecting the portion of the order that purports to discharge nondischargeable debt. The order itself was infected by fundamental error because, as a matter of law, it could not be confirmed, regardless of whether Great Lakes objected. And it is evident from the manner in which the court let counsel prepare the findings on the present matter that there was no significant investment of judicial effort.

### 4

Finally, the majority incorrectly finds that Great Lakes "impliedly accepted" the plan when it did not object to confirmation.

### a

The record, reviewed under the "special scrutiny" standard, does not adequately establish that Great Lakes even knew about the offending exotic term. If it did not know, it could not be found to have accepted on any theory.

### b

Acceptance can hardly be implied from the behavior of Great Lakes, which never took a position contrary to its entitlement to receive postpetition interest after the plan payments were completed. Great Lakes understood, with good reason based on a host of decisions, that to be the law. It acted accordingly.

### c

Moreover, implied acceptance is a troublesome theory that has been largely discred-

ited in all but one application: the formality of acceptance of a chapter 13 plan by a secured creditor whose claim is not being treated in accord with statutory standards may be implied from silence. As I will explain, acceptance in that context is a formality because the secured creditor can nevertheless opt out of the plan and disregard the plan's treatment of the secured claim.

Judicial authority for the implied acceptance theory outside the limited context of the confirmation formality involving chapter 13 secured claims is tenuous.

One begins with the leading chapter 11 implied acceptance case, *In re Ruti–Sweetwater, Inc.*, 836 F.2d 1263, 1266 (10th Cir. 1988), which has never achieved any following and which has been squarely rejected by the Ninth Circuit Bankruptcy Appellate Panel in a frequently-cited decision. *In re M. Long Arabians*, 103 B.R. 211 (9th Cir. BAP 1989). The Collier treatise sums it up: "The case of *In re Ruti–Sweetwater, Inc.*, holding that inaction by a non-voting single class creditor constituted acceptance by the class, was not correctly decided and has been specifically rejected in recent decisions." 7 LAWRENCE P. KING ET AL. EDS., COLLIER ON BANKRUPTCY ¶ 1126.04 (1997); *see* 4 WM. L. NORTON, JR., ED., NORTON BANKR.LAW & PRACTICE 2D § 91:21 (1997) ("NORTON") ("While courts in several cases have held that the class is deemed to accept the plan by its failure to vote, courts in a growing number of more recent cases have held to the contrary."). We should be faithful to our own precedent in *M. Long Arabians.*

The majority's reliance on the Third Circuit decision, *In re Szostek*, 886 F.2d 1405 (3d Cir.1989), amounts to reliance on *Ruti–Sweetwater*, because *Szostek* was premised upon *Ruti–Sweetwater.* Moreover, the Ninth Circuit has squarely rejected *Szostek's* other holding (*Szostek*, 886 F.2d at 1411–14) that the present value requirements of § 1325(a)(ii) are not mandatory and, in holding that the present value requirements are mandatory, has cast doubt on the viability of implied acceptance. *Barnes v. Barnes (In re Barnes)*, 32 F.3d 405, 407 (9th Cir.1994) ("It is possible to distinguish *In re Szostek* on the ground that the creditor in that case did not timely object to [i.e. impliedly accepted] the plan, whereas the Creditors here did. But

this distinction does not account for the broad [statutory] language quoted above.").

Neither of the Ninth Circuit decisions invoked by the majority support application of the implied acceptance theory to an unsecured creditor.

The implied acceptance theory played no role in *In re Gregory*, 705 F.2d 1118 (9th Cir.1983), in which a creditor holding an unsecured claim for an embezzlement debt that is dischargeable in chapter 13 (but not in chapter 7) did not object to a zero payment chapter 13 plan, let the order of confirmation become final, and then filed an adversary proceeding for a declaration that the embezzlement debt had not been discharged because it was not "provided for" by a zero payment plan and questioned notice and good faith. The Ninth Circuit rejected the creditor's appeal on straightforward finality grounds with which there can be little quarrel. To the extent it was a belated direct attack on confirmation, the creditor had received adequate notice of the plan and the confirmation hearing and plainly flunked the requirement of diligence.

As a matter of law, unsecured creditors have no right to "accept" a chapter 13 plan. 11 U.S.C. § 1325(a)(4); 5 NORTON § 122:2 ("Acceptance or rejection of a Chapter 13 plan is relevant to confirmation only with respect to the holder of an allowed secured claim and only for purposes of satisfying the confirmation standard set forth in Code § 1325(a)(5)(A)."). Hence, acceptance is irrelevant and judicial comments about acceptance by unsecured creditors are mere dicta.

The more recent decision of *Andrews v. Loheit*, 49 F.3d 1404 (9th Cir.1995), posed the question whether a chapter 13 trustee has standing to object to confirmation of a plan. The trustee blocked confirmation by objecting under §§ 1325(a)(1) and (a)(5). The Ninth Circuit, rejecting the debtors' appeal, held that the trustee does have standing to object because the trustee has the § 1302(b) statutory duty to "appear and be heard" at the confirmation hearing on the question whether, as required by § 1325(a)(1), the "plan complies with the provisions of this chapter [13] and with the other applicable provisions of this title [11]". 11 U.S.C. §§ 1302(b) & 1325(a)(1). The court of ap-

peals noted that the Bankruptcy Appellate Panel had found trustee standing under § 1325(a)(5), about which ruling it expressed doubt in light of the implied acceptance theory as to secured creditors and said: "[b]ecause we find it problematic to confer standing in this instance under § 1325(a)(5), we affirm on the basis that the Chapter 13 trustee has standing to object under § 1325(a)(1)." *Andrews,* 49 F.3d at 1409. Its comments about implied acceptance are pure dicta.

The difference between secured and unsecured status makes all the difference. A chapter 13 plan that does not provide for surrendering the secured property or paying the full value of the secured claim through the plan can be confirmed only if the claimant "has accepted" the plan. 11 U.S.C. § 1325(a)(5). Courts have been willing to imply acceptance and confirm such chapter 13 plans when impaired secured creditors remain silent. Implied acceptance by secured creditors in chapter 13, however, is largely a formality because such plans are not really enforceable against the secured creditors—they have the option to retain their security and not file a claim. *Bisch v. United States (In re Bisch),* 159 B.R. 546 (9th Cir. BAP 1993). In other words, the confirmation of such a plan, from the standpoint of secured creditors, does not deprive them of the value of their security.

The majority cites no case in which a secured creditor whose acceptance was essential to confirmation has been involuntarily deprived of its security on an implied acceptance theory. Indeed, ascribing too much muscle to an implied acceptance strays into the frontier of unconstitutionality because the payment requirements of § 1325(a)(5)(B) are "a constitutionally-imposed limitation of the power of a chapter 13 plan to modify the rights of a secured claim holder." 5 NORTON, § 122:8.

To the extent that the implied acceptance theory has any vitality, it is an unwarranted extension for the majority to apply it to nondischargeable claims of unsecured creditors.

### D

The ultimate irony is that none of this controversy would have arisen if Great Lakes had anticipated the debtors' ambush and elected to stay out of the line of fire by not filing a proof of claim.

Without a proof of claim, Great Lakes would not have been entitled to receive payments under the plan. For most unsecured creditors, that situation would be a disaster because the claims are nevertheless discharged. But Great Lakes' student loan claim cannot be discharged in chapter 13. Hence, the student loan would still be owed, with interest accrued through the ultimate date of final payment.

Great Lakes would have had to content itself with no payments during the payment life of the plan, but that would have been only one or two months in light of the fact that more than 95 percent of the total debt was owed to Great Lakes.

\* \* \* \* \* \*

I respectfully dissent from the affirmance of the bankruptcy court's § 105 injunction.